

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0043-13

**THE STATE OF TEXAS**

**v.**

**CLINT SAENZ, Appellee**

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE THIRTEENTH COURT OF APPEALS
## NUECES COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. JOHNSON, J., did not participate.

## O P I N I O N

On the State's petition for discretionary review, we determine that the court of appeals erred (1) by failing to apply a *de novo* standard of review to the trial court's ultimate legal determination that Clint Saenz, appellee, was in custody when he made incriminating statements to police, and (2) by failing to abate the appeal for further findings of fact by the trial court. We reverse and remand this case to the court of appeals with instructions to abate

the case to the trial judge for supplemental findings.

## I. Background

### A. Facts

Just after two in the morning, Officer Bintliff was dispatched to a Corpus Christi fast-food restaurant following a call of a disturbance between several customers and two intoxicated men. When he arrived at the location, Officer Bintliff encountered two men whose clothing matched the caller's description. The men were sitting inside a truck with the engine running in the restaurant's parking lot. The officer approached the truck. He told the passenger, who was leaning his head outside the truck and pointing into the restaurant while yelling, to stop yelling and get back inside the truck, and told the driver, appellee, to turn off the truck.

Officer Bintliff noticed that appellee showed signs of intoxication. The officer told appellee three times to turn off the truck before appellee complied. Appellee had answered the officer's initial requests to turn off the truck with claims that he was not driving and that he was moving the truck for someone else. The officer had appellee exit the truck, at which time he also smelled alcohol on appellee's breath and saw that his eyes were bloodshot. To investigate his suspicion that appellee may have been driving while intoxicated, he placed appellee unhandcuffed into the back of his patrol car and called for a department DWI

specialist.[1]

Officer Sanders responded to the call. He took over the investigation from Officer Bintliff and spoke to appellee, who remained in the patrol car unhandcuffed. In response to questions posed by Officer Sanders, appellee said that he "drove the vehicle there" to the restaurant and had become involved in a "fight." Appellee also said that he "tried to break up the fight" and that he had visited "several . . . local bars" earlier in the evening. In response to the officer's question about how much alcohol he had consumed that night, appellee admitted to "drinking approximately six beers in four hours." While speaking, appellee had a moderate odor of alcohol on his breath, slurred his speech, and had bloodshot eyes. In light of the signs of intoxication, Officer Sanders asked appellee for a breath sample. Appellee refused. Explaining his decision, appellee said that he had "a much higher tolerance" for alcohol because "he drinks very often." Appellee failed field sobriety tests and was arrested for DWI.

**B. Pretrial Motion to Suppress Statements and Trial Court's Factual Findings**

---

[1]       We note that the record is unclear as to what Officer Bintliff said to appellee when he placed appellee in the back seat of his patrol car. The record from the hearing on the motion to suppress shows the following:

> [Defense Counsel]: And when you put him in the back of your car, you told him that he could not leave, for him to wait there and stay there until further investigation continued?
> [Officer Bintliff]: Yes, sir.
> [Defense Counsel]: Did you tell him at that point that he was suspected of DWI?
> [Officer Bintliff]: No, I did not.
> Defense Counsel: Did you tell him that he was suspected of public intoxication?
> [Officer Bintliff]: No.

After he was charged with DWI, appellee filed a pretrial motion to suppress his statements to Officer Sanders. At the pretrial hearing on the motion, appellee argued that his statements to Officer Sanders were inadmissible because they were obtained while he was in custody without his having received the statutory warnings advising him of his right to remain silent. The State responded that Officer Bintliff's placement of appellee unhandcuffed in the patrol car constituted an investigatory detention pursuant to a traffic stop, and that Officer Sanders's questions occurred before the point at which appellee was arrested and in custody. The sole evidence at the hearing came from the testimony of the two officers, who described the events as detailed above, and their written report that was admitted into evidence.

The trial court granted the motion and suppressed appellee's oral statements. In response to the State's request, the trial court made findings of fact and conclusions of law. Those findings and conclusions stated that Officer Bintliff had no reasonable suspicion to detain appellee for the disturbance in the restaurant and that appellee was "under arrest for suspicion of DWI when Officer Sanders began questioning" him without giving him the statutory warnings.[2] The trial court's findings of fact omitted many details, such as whether

_____

[2] The trial court made twelve findings of fact. The trial court's first five findings state that (1) "Officer Bintliff was dispatched to a restaurant establishment . . . because of a disturbance [and he] "did not observe any specific criminal act"; (2) "Officer Bintliff was given a description of two males, one wearing a white shirt and the other a green shirt"; (3) appellee "was the male wearing the white shirt and was sitting on the driver's seat with the key in the ignition and the vehicle in the reverse gear"; (4) "Officer Bintliff did not testify that a crime was about to be committed"; and (5) appellee "was identified and placed in the back seat of Officer Bintliff's patrol car for suspicion of
(continued...)

the trial court believed that the officers were credible witnesses, whether the trial court believed that Officer Bintliff told appellee that he was not free to leave when appellee was placed in the police car or whether the officer said nothing, and how long appellee had been in the police car when he made the statements to Officer Sanders.

### C. The Court of Appeals

After concluding that a deferential standard of review was appropriate for this mixed question of law and fact, the court of appeals held that the trial court properly suppressed appellee's oral statements because they were made while he was in custody without having received the statutory warnings. *Saenz v. State*, No. 13-11-00328-CR, 2012 WL 7783406, at *2 (Tex. App.—Corpus Christi Dec. 28, 2012). With respect to the standard of review, the court of appeals reasoned that the custody determination in this case "necessarily involves an evaluation of the credibility and demeanor of the two police officers that testified at the suppression hearing, because custody is 'a fact-specific inquiry,' and because the only facts in the record were those established by the officers' testimony." *Id*. at *2 (citing *Herrera v. State*, 241 S.W.3d 520, 526, 535 (Tex. Crim. App. 2007)). On this basis, the court of appeals concluded that it "must give 'almost total deference' to this conclusion of law." *Id*. (citing *Herrera*, 241 S.W.3d at 526-27). As to the merits, the court determined that, because Officer Bintliff had probable cause to arrest appellee at the time he placed appellee in the back seat

---

[2](...continued)
DWI." The trial court's sixth finding determined that appellee "was not free to leave the police vehicle and was under arrest." Numbers seven through twelve are consistent with the testimony by Officer Sanders described above, and, therefore, those findings are not repeated here.

of the patrol car, and because the officer failed to inform appellee that he was not under arrest, this constituted a manifestation of the officer's knowledge of probable cause. *Id*. at *3-4. The court explained that the record established that Officer Bintliff placed appellee in the car "without saying anything to him," and noted that "[n]either officer testified that [appellee] was told at any point that he was free to leave." *Id*. The court concluded that the facts of the case fit "squarely into" the fourth category of situations that may constitute custody as set forth in *Dowthitt v. State*. *Id*. at *4 (citing 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (describing fourth situation as "when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave")).

We granted the State's two grounds in its petition for discretionary review to address: (1) whether the court of appeals erred (a) by applying a deferential standard of review to the determination that appellee was in custody, and (b) by failing to remand for more complete findings of fact by the trial court; and (2) whether the court of appeals erred in its ultimate determination that appellee's statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).[3] We sustain the first ground in its

---

[3] The State's petition presents two grounds:

1. Whether the Thirteenth Court of Appeals applied the wrong standard of review by affording almost total deference to the trial court's determination as to when the suspect was in custody, in view of the fact that there was no dispute concerning the facts surrounding the detention, nor did the trial court indicate in its findings of fact, or otherwise, that it disbelieved any of the historical facts related by the officers involved?

(continued...)

entirety and do not reach the second ground.

## II. Standard of Review for Determination of Custodial Status

In its first ground, the State suggests that the trial court's conclusion of law that appellee was in custody should be reviewed *de novo*, as opposed to the almost-total-deference standard applied by the court of appeals. *Saenz*, 2012 WL 7783406, at \*2. The State contends that the court of appeals erred by determining that, because "custody is a 'fact-specific inquiry,'" and because the only facts in the record came from the testimony of the two officers, this was "necessarily" a mixed question of law and fact that turned on the credibility and demeanor of the two officers, and therefore, an almost-total-deference standard of review applied. *Id.* (citing *Herrera*, 241 S.W.3d at 526-27). We agree with the State that the court of appeals misapplied the standard of review.

The Supreme Court has described how an appellate court must decide whether a person was in custody for purposes of applying *Miranda*. *Thompson v. Keohane*, 516 U.S. 99, 112–13, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995). An appellate court both (1) conducts a factual review in examining the circumstances surrounding the interrogation, and (2) makes an ultimate legal determination whether a reasonable person would not have felt at liberty to leave. *Id.* The Court stated,

---

[3](...continued)
　　　2. Whether the Thirteenth Court of Appeals erred by concluding that a driver temporarily detained on suspicion of DWI and placed in the back of a patrol car during a brief investigation is in custody for purposes of *Miranda* simply because the detaining officer did not inform the driver of the reason for the detention and that he was not under arrest?

> Two discrete inquiries are essential to the [custodial] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the "ultimate inquiry": "[was] there a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." The first inquiry, all agree, is distinctly factual. State-court findings . . . attract a presumption of correctness. . . . The second inquiry, however, calls for application of the controlling legal standard to the historical facts. This ultimate determination, we hold, presents a "mixed question of law and fact" qualifying for independent review.

*Thompson*, 516 U.S. at 112–13 (citations omitted).

This Court has similarly described the standard of review that should be applied to a trial court's determination that a person was in custody for purposes of *Miranda*. This Court has explained that a reviewing court applies a bifurcated standard of review to a trial court's findings of fact and conclusions of law regarding a motion to suppress. *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997). "[A]n appellate court must give almost total deference" to the trial court's assessments of historical fact and conclusions with respect to mixed questions of law and fact that turn on credibility and demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). In contrast, an appellate court must review *de novo* mixed questions of law and fact that do not turn on credibility and demeanor. *Id*. We recently stated,

> When the posture of a case does not present issues of pure fact, or of mixed questions of law and fact that turn on credibility or demeanor, and presents only questions of the validity of the trial court's 'legal rulings'—[including a *Miranda* custody determination]—an appellate court's review is *de novo*.

*Id*.; *see also Herrera*, 241 S.W.3d at 526–27.

In *Alford v. State*, this Court further explained that, "[i]f credibility and demeanor are not necessary to the resolution of an issue, whether a set of historical facts constitutes custodial interrogation . . . is subject to *de novo* review because that is an issue of law[.]" 358 S.W.3d 647, 653 (Tex. Crim. App. 2012). Moreover, the fact that credibility and demeanor are important factors in the trial court's assessment does not always mean that the question "turns" on an evaluation of credibility and demeanor. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). Rather, a question "turns" on credibility and demeanor "when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is needed to decide the substantive issue." *Id*. (citing *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1997)).

The ultimate legal determination of whether an individual was in custody requires an appellate court to take the facts, as assessed for weight and credibility by the trial court, and then to make a legal determination as to whether those facts amount to custody under the law. *Ortiz*, 382 S.W.3d at 372. Here, after the trial court revises its findings of fact as discussed in the next section, the court of appeals must take those findings that are supported by the record and then determine whether, as a matter of law, they amount to a *Miranda* custody situation. Because the matter of whether appellee was in custody when he was interrogated by Officer Sanders is a mixed question of law and fact that does not turn on credibility or demeanor, we apply (1) a deferential standard of review to the trial court's factual assessment

of the circumstances surrounding the interrogation, and (2) a *de novo* review to its ultimate legal determination that appellee was in custody. *Ortiz*, 382 S.W.3d at 372; *Alford*, 358 S.W.3d at 653. Here, the court of appeals appears to have focused only on the first prong without addressing the second prong that requires it to analyze *de novo* whether the facts, as determined by the trial court, amount to custody under the applicable law. This was error.

### III. Remand is Necessary for Completion of Findings of Fact

The State's first ground also argues that the appellate court erred by failing to remand the case for more complete findings by the trial court. In its second ground, the State contends that the court of appeals erred by determining that the facts establish that appellee was in custody under the fourth situation in *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex. Crim. App. 1999). Because we agree with the State that the findings are inadequate to make the ultimate legal determination of whether appellee was in custody at the time of the challenged statements, we do not reach the State's second ground. We, however, discuss how a court determines that a person was in custody to explain why the trial court's findings are inadequate here.

### A. Findings Made By Trial Court Were Inadequate

Because findings of fact were requested by the State, the losing party on the motion to suppress, the trial court was obligated to make findings that were adequate for the appellate court to decide the legal determinations in the case. "[U]pon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings."

*State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (quoting *State v. Cullen*, 195

S.W.3d 696, 699 (Tex. Crim. App. 2006)). "[E]ssential findings" mean "findings of fact and

conclusions of law adequate to provide an appellate court with a basis upon which to review

the trial court's application of the law to the facts." *Id*. (quoting *Cullen*, 195 S.W.3d at 699).[4]

As we have held in several recent decisions, an appellate court must abate for

additional findings of fact when a party has requested findings of fact and the findings that

are made by a trial court are so incomplete that an appellate court is unable to make a legal

determination. *See Elias*, 339 S.W.3d at 674 (reversing and remanding for additional fact

findings because dispositive historical fact of whether Elias timely activated his turn signal

was absent from findings made by trial court); *State v. Mendoza*, 365 S.W.3d 666, 673 (Tex.

Crim. App. 2012) (reversing and remanding for additional fact findings because dispositive

credibility determination of testifying officer was absent from trial court's findings); *Cullen*,

195 S.W.3d at 699 (reversing and remanding for fact findings because trial court completely

declined a proper request to issue them). We will not presume factual findings that may be

dispositive in a case when a trial court's findings are an inadequate basis upon which to make

a legal conclusion and when those findings have been properly requested by a losing party.

---

[4]     In the absence of any findings of fact, either because none were requested or none were
spontaneously made by the trial court, we must presume that the trial court implicitly resolved all
issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State
v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *State v. Ross*, 32 S.W.3d 853, 857
(Tex. Crim. App. 2000)). A case reviewed in that posture requires an appellate court to presume that
a trial court disbelieved uncontradicted testimony that is inconsistent with its suppression ruling.
*Id*. (citing *Ross*, 32 S.W.3d at 857).

*See Elias*, 339 S.W.3d at 674; *Mendoza*, 365 S.W.3d at 673; *Cullen*, 195 S.W.3d at 699. As in the cases cited above, a similar inadequacy exists in this trial court's findings regarding the historical facts to be considered when making the ultimate legal determination whether appellee was in custody.

### B. Omitted Findings Would Affect Ultimate Legal Conclusion

The parties dispute whether the court of appeals erred by determining that the facts established that appellee was in custody at the time of his oral statements to Officer Sanders. A person is in custody only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 114 S. Ct. 1526 (1994). Applying this principle in *Dowthitt*, we outlined at least four general situations that may constitute custody:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt*, 931 S.W.2d. at 255. The first three situations require that the restriction on a suspect's freedom of movement must reach "the degree associated with an arrest" instead of an investigative detention. *Id*. The fourth situation requires an officer's knowledge of probable cause to be manifested to the suspect. *Id*. Custody, however, is not established by the fourth situation unless the manifestation of probable cause "combined with other circumstances" of the interview, such as duration or factors of "the exercise of police control

over [a suspect]," would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.  *Id*. at 255–57.

Although the court of appeals focused only on the fourth situation, our review of the record indicates that the second situation may also be implicated here because, at one point during his testimony, Officer Bintliff testified that after he placed appellee in the patrol car, he told appellee that he could not leave.  If the trial court believed that testimony, then that might affect the ultimate legal determination of whether a person would reasonably believe that he was not free to leave.  If the trial court's future findings determine that Officer Bintliff told appellee that he was not free to leave, then this case could be similar to the second situation in *Dowthitt* based on evidence that appellee was in the back seat of the patrol car, was not free to leave, and was told that he could not leave.  *See Dowthitt*, 931 S.W.2d at 256.  Because the factual findings are inadequate to assess whether the circumstances fit within the second situation described in *Dowthitt*, further factual findings are necessary before a court may determine that a person was in custody on this basis.

We also conclude that the fourth situation of *Dowthitt* may be implicated, although for different reasons than those described by the court of appeals.  Contrary to the holding by the court of appeals, an officer does not necessarily manifest to a suspect that there is probable cause to arrest him merely by silently placing him in the back of a patrol car when there is probable cause to arrest.  Rather, a reviewing court must determine whether, under all of the objective circumstances, a reasonable person would have believed that he was

under restraint to the degree associated with an arrest. *See Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985) (noting that court makes custody determination on "ad hoc" basis); *see also Dowthitt*, 931 S.W.2d at 255–57 (fourth situation was established when suspect made damaging admission supporting probable cause in addition to "the length of interrogation [and] the existence of factors involving the exercise of police control"); *State v. Stevenson*, 958 S.W.2d 824, 829 n.7 (Tex. Crim. App. 1997) (observing of *Dowthitt* that "we have found the manifestation of probable cause to arrest to trigger custody in certain unusual situations"); *Keaton v. State*, 755 S.W.2d 209, 210 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (officer's placement of traffic-stop suspect into back of patrol car to ask for license and registration was not custodial interrogation under *Miranda*). We disagree that an officer's silence alone meets the Supreme Court's characterization of manifestation of probable cause that it has described as "[a]n officer's knowledge or beliefs . . . conveyed, by word or deed, to the individual being questioned." *Stansbury*, 511 U.S. at 325; *see also Ortiz*, 382 S.W.3d at 372–73 (officer's statements, handcuffing of suspect, and other circumstances manifested to suspect officer's knowledge of probable cause to arrest). "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue." *Stansbury*, 511 U.S. at 325. We conclude that the court of appeals erred by determining that the officer's knowledge of probable cause to arrest appellee for DWI combined with the placement of appellee into the patrol car unhandcuffed manifested to appellee that he was under arrest. *Stevenson*, 958 S.W.2d at 829 n.7; *Keaton*,

755 S.W.2d at 210. Rather than focusing on one discrete circumstance, such as an officer's silence when he places a suspect in his patrol car, the court of appeals should have examined the totality of the circumstances to determine whether a reasonable person would have believed that he was under restraint to the degree associated with a formal arrest.[5] *Dowthitt*, 931 S.W.2d at 255.

Consideration of the entire circumstances includes a determination of the length of time that the person was in a patrol car. *See Dowthitt*, 931 S.W.2d at 256 (noting "[t]he long time period involved, while not itself dispositive, is an important factor in determining whether custody occurred" before formal arrest). The trial court's findings in this case, however, do not specify how long appellee was inside the car before he made the statements to Officer Sanders, and the record is unclear on this point, suggesting that the conversation between appellee and Officer Sanders occurred some length of time between twelve minutes and over two hours after appellee was placed in the patrol car. *See Ortiz*, 382 S.W.3d at 373, 374 n.30 (mentioning duration of investigatory detention among the "accretion of objective circumstances" equating to custody under *Miranda*).[6]

In assessing whether appellee was in custody under *Dowthitt*, a future finding about

---

[5]     The court of appeals did not discuss the first and third *Dowthitt* situations. We observe, however, that the trial court's future finding as to whether appellee was told that he could not leave would likely affect the court's analysis on those categories and the overall analysis of the case.

[6]     The trial court is, of course, limited to making findings based on the facts that currently appear in the record. *See State v. Elias*, 339 S.W.3d 667, 676-77 (Tex. Crim. App. 2011) (noting that inadequacy in trial court's findings remediable "by way of retroactive findings and conclusions upon remand").

what Officer Bintliff told appellee would likely affect the ultimate determination of custody. *Compare Ortiz*, 382 S.W.3d at 373–375 (suspect in custody when officer almost instantly accused suspect of drug possession, suspect and his wife were eventually outnumbered by officers and patrol cars, both suspect and wife were handcuffed nearly simultaneously, and officers manifested discovery of contraband in suspect's presence) *with Stevenson*, 958 S.W.2d 824 (officer's switch to questions investigating suspect for DWI and administration of field sobriety tests were inadequate to conclude suspect was in custody). We, therefore, do not reach the ultimate question in this case with respect to whether the trial court properly suppressed appellee's statements because the trial court's findings are an inadequate basis upon which to make that ultimate legal conclusion.[7]

We hold that the court of appeals erred by determining, in the absence of adequate fact-findings to reflect the totality of the circumstances, that the officer's silence at the moment he placed appellee in the patrol car manifested to appellee that he was in custody. The court of appeals should have abated the case for more complete findings of fact. We sustain the State's first ground.

### IV. Conclusion

The court of appeals erred in applying a deferential standard of review to the trial court's conclusion of law that appellee was in custody at the moment he made the challenged

---

[7] It may be that the court of appeals's ultimate legal conclusion in this case was correct; we, however, restrict our holding to address the court of appeals's error in attempting to reach that legal conclusion in the absence of adequate fact-findings from the trial court.

statements. Additionally, the trial court's findings describing the entire circumstances surrounding the interrogation were inadequate from which to reach a legal conclusion on the question of custody. Accordingly, we reverse the judgment of the court of appeals and remand this case to that court with instructions for abatement to the trial court for further proceedings.

Delivered: October 23, 2013

Publish