

# NUMBER 13-11-00328-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

CLINT SAENZ,                                                          Appellee.

**On appeal from the 28th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION ON REMAND

**Before Chief Justice Valdez and Justices Garza and Perkes[1]
Memorandum Opinion on Remand by Justice Garza**

This case is on remand from the Texas Court of Criminal Appeals. Appellee Clint

Saenz was indicted on one count of driving while intoxicated ("DWI"), *see* TEX. PENAL

---

[1] The Honorable Rose Vela, former Justice of this Court, did not participate in this decision because her term of office expired on December 31, 2012. In accordance with the appellate rules, she was replaced on panel by Justice Gregory T. Perkes. *See* TEX. R. APP. P. 41.1(a).

CODE ANN. § 49.04(a) (West, Westlaw through 2013 3d C.S.), and he moved to suppress evidence of certain oral statements made to police. The trial court granted the motion, and we affirmed. *See State v. Saenz*, No. 13-11-00328-CR, 2012 WL 7783406, at *1–5 (Tex. App.—Corpus Christi Dec. 28, 2012) (mem. op., not designated for publication). The court of criminal appeals reversed, holding, among other things, that while our "ultimate legal conclusion" that Saenz was in custody at the time he made the challenged statements "may be . . . correct," we erred "in attempting to reach that legal conclusion in the absence of adequate fact-findings from the trial court." *State v. Saenz*, 411 S.W.3d 488, 498 & n.7 (Tex. Crim. App. 2013). The court of criminal appeals remanded the cause to this Court for abatement to the trial court for more complete findings of fact. *Id.* at 498. In light of the trial court's supplemental findings of fact, we hereby reinstate the appeal and affirm the trial court's judgment.

## I. BACKGROUND

Officer Phillip Bintliff of the Corpus Christi Police Department testified that he was dispatched to a Whataburger restaurant in the early morning hours of April 29, 2010. The dispatcher advised Officer Bintliff that a witness reported "two males . . . trying to start a fight with some of the customers inside." The witness also advised that both of the males were intoxicated, and that one was wearing a white shirt and the other a green shirt.

When Officer Bintliff arrived at the scene, he noted that Saenz and his passenger met the descriptions relayed by the witness on the 911 call. Saenz was in the driver's seat of a truck improperly parked across two handicapped parking spaces. According to Officer Bintliff, the key was in the ignition, the engine was running, and the reverse lights were on, indicating that the truck was in reverse gear. Officer Bintliff instructed Saenz to

"park the car and turn it off." Saenz initially declined and, exhibiting a "confused, dazed-type look," claimed that he "wasn't driving." Officer Bintliff repeated his instruction. Saenz again failed to comply, and instead told the officer that he was "moving the truck for somebody." Officer Bintliff then instructed Saenz to turn off the car a third time; this time, Saenz complied.

At a suppression hearing on May 5, 2011, Officer Bintliff testified: "As soon as I got [Saenz] out, I could smell the alcohol on his breath. I saw his eyes were bloodshot." He then put Saenz in the backseat of his patrol car. Officer Bintliff did not testify at that time that he told Saenz anything, at any point, other than to turn off his car. He did not testify that he advised Saenz that he was not under arrest; nor did he testify that he advised Saenz that he was a suspect for DWI or any other crime. When defense counsel asked: "And when you put him in the back of your car, you told him that he could not leave, for him to wait there and stay there until further investigation continued?", Officer Bintliff replied, "Yes, sir."

Officer Justin Sanders, a DWI investigator, then arrived at the scene. Before asking Saenz to perform field sobriety tests, and before administering *Miranda* warnings, Officer Sanders asked Saenz several questions regarding his alcohol consumption and the means by which he arrived at the Whataburger. Saenz responded in part that he was trying to break up a fight and had consumed six beers in four hours. Saenz was then arrested for DWI.

Saenz moved to suppress the oral statements he made to Officer Sanders and, after hearing the testimony of Officers Bintliff and Sanders, the trial court granted the motion. In its findings of fact and conclusions of law, the trial court found specifically that

3

Officer Sanders based his decision to arrest Saenz for DWI in part on the statements provided in response to the initial questioning. The trial court further found that "reasonable suspicion was lacking to believe that [Saenz] was about to commit a crime when Officer Bintliff detained him and placed him in his patrol vehicle." The trial court concluded:

> [Saenz] was under arrest for suspicion of DWI when Officer Sanders began questioning [Saenz] about where he had been, how he arrived at the Whataburger, how much alcohol he had been consuming, where he was consuming alcohol and how long he had been drinking. . . . Officer Sanders did not read [Saenz] the [*Miranda*] statutory warnings prior to the interrogation.

This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through 2013 3d C.S.) (providing that the State is entitled to appeal an order granting a motion to suppress "if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case").

Pursuant to the opinion issued by the Texas Court of Criminal Appeals, *see Saenz*, 411 S.W.3d at 498 & n.7, we abated the cause and remanded to the trial court for more complete findings of fact. On remand, the trial court issued the following supplemental findings of fact:

1.  The Court finds that these findings are supported by credible evidence. The Court makes no general credibility determinations.

2.  Neither Officer Bintliff nor Officer Sanders read the statutory [*Miranda*] warnings prior to question[ing] Mr. Saenz.

3.  Mr. Saenz was instructed to turn off his vehicle, was placed in the back of Officer B[]intliff's police car, and was instructed by Officer Bintliff not to leave. . . .

4.  No officer advised Mr. Saenz that he was free to leave at any time

4

prior to or during his interrogation.

5. Officer Bintliff approached Mr. Saenz shortly after 2:13 a.m. Officer Sanders was dispatched at 2:25 a.m., arriving some time after. The Court finds that Mr. Saenz was in custody for approximately 20 minutes prior to his interrogation by Officer Sanders.

6. A reasonable person, under these circumstances, would have believed he had been arrested during the time of his interrogation.

7. Officer Bintliff's manifestation of his intent to arrest Mr. Saenz was made when he physically placed Mr. Saenz in his police car and verbally told him not to leave. Officer Bintliff testified he believed Mr. Saenz was intoxicated before placing Mr. Saenz in his police car and called for a DWI enforcement officer.

Because the findings did not specifically indicate (1) how long Saenz was in the police car prior to interrogation or (2) whether the officers told Saenz to wait while they continued investigating, we again remanded for additional findings on these specific issues. On May 5, 2014, the trial court issued the following supplemental findings of fact based upon the testimony given at the May 5, 2011 suppression hearing:

1. The Court makes no general credibility determinations regarding the officer[s'] testimony.

2. The Court finds neither Officer Bintliff nor Officer Sanders read the statutory [*Miranda*] warnings prior to questioning Mr. Saenz.

3. The Court finds that when Officer Bintliff first approached Mr. Saenz, Mr. Saenz was instructed to turn off his vehicle, was placed in the back of Officer Bintliff's police car, and was instructed by Officer Bintliff he could not leave.

4. The Court finds no officer advised Mr. Saenz that he was free to leave at any time prior to or during his interrogation.

5. The Court finds Officer Bintliff first approached Mr. Saenz shortly after 2:13 am. Officer Sanders was subsequently dispatched at 2:25 am, arriving some time after. The Court finds that Mr. Saenz was in custody for approximately 12–18 minutes or longer prior to his interrogation by Officer Sanders.

5

6.     The Court finds that a reasonable person including Mr. Saenz, under these circumstances, would believe he had been arrested during the time of his interrogation.

7.     The Court finds Officer Bintliff's manifestation of his intent to arrest Mr. Saenz was made when he physically placed Mr. Saenz in his police car and verbally told him not to leave. The Court finds Officer Bintliff testified he believed Mr. Saenz was intoxicated before placing Mr. Saenz in his police car.

8.     The Court finds Officer Bintliff testified Defendant Clint Saenz was placed in his police vehicle alone and was told he could not leave.

9.     The Court finds Officer Bintliff's rear seat area is an enclosed area and the door can not be opened from the inside of the vehicle.

10.    The Court finds there were two other police vehicles called to the scene.

11.    The Court finds that after placing Defendant in his vehicle, Officer Bintliff did not have any further conversation with the Defendant.

12.    The Court finds the Defendant was in custody and under arrest 12 to 18 minutes or longer before Officer Sanders arrived.

13.    The Court finds neither Officer Sanders nor Officer Bintliff advised Defendant of his rights before placing him in the police vehicle or while he was in custody and before interrogation.

Because these findings did not address the issue of whether either officer told Saenz to wait in the police car while they continued investigating, we once again remanded for findings as to that specific issue. The trial court then entered the following supplemental findings:

5.     The Court finds that Officer Bintliff's answer to a compound question is ambiguous and this Court cannot enter findings regarding whether Officer Bintliff told Defendant Clint Saenz to wait while he continued investigati[ng]. . . .

6.     The Court finds that Officer Sanders did not tell Defendant Clint Saenz to wait while they continued investigating.

6

## II. STANDARD OF REVIEW

An appellate court reviews a trial court's pre-trial suppression ruling under a bifurcated standard. Almost total deference is afforded to the trial court's determination of fact. Determinations of fact include "who did what, when, where, how, or why" and "credibility determinations." Because trial judges . . . are uniquely situated to observe first hand the demeanor and appearance of a witness, this Court has long recognized that they are the sole arbiter of questions of fact and of the weight and credibility to give testimony. In that capacity, a trial judge is free to believe or disbelieve any part of the testimony as he sees fit. When a trial judge makes written findings of fact, as he did in the instant case, a reviewing court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. The reviewing court then proceeds to a de novo determination of the legal significance of the facts as found by the trial court.

*Baird v. State*, 398 S.W.3d 220, 226 (Tex. Crim. App. 2013) (footnotes and citations omitted).

## III. DISCUSSION

Article 38.22, section 3 of the code of criminal procedure provides that an oral custodial statement is inadmissible as evidence unless, among other things, the accused is warned prior to the statement as provided in section 2 of that article and knowingly, intelligently, and voluntarily waives the rights set out in the warning. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2).[2]

---

[2] Section 2 of article 38.22 requires that the accused receive the following warnings:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time . . . .

The court of criminal appeals has suggested that there are at least four general situations which may constitute custody for purposes of *Miranda* and article 38.22:

(1)     when the suspect is physically deprived of his freedom of action in any significant way,

(2)     when a law enforcement officer tells the suspect that he cannot leave,

(3)     when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and

(4)     when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (citing *Shiflet v. State,* 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)). "Concerning the fourth situation, . . . the officers' knowledge of probable cause [must] be manifested to the suspect." *Id.* (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)). For any of the *Dowthitt* situations to constitute custody, "the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention." *Id.* (citing *Stansbury*, 511 U.S. at 322); *see Terry v. Ohio*, 392 U.S. 1, 30–31 (1968).[3]

Here, the trial court found that Saenz "was instructed by Officer Bintliff not to leave," but it did not explicitly find that Saenz was told that the *reason* he could not leave was

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a)(1)-(5) (West, Westlaw through 2013 3d C.S.). An accused must be administered these warnings "or their fully effective equivalent" in order for the statement to be admissible. *Id.* art. 38.22, § 3(e)(2).

[3] The Texas Court of Criminal Appeals has construed *Terry* to permit "a temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed." *State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008) (citing *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968)). "[A] Fourth Amendment *Terry* detention is not a custodial arrest" for purposes of *Miranda* or article 38.22 of the Texas Code of Criminal Procedure." *Id.*

because police needed time to continue their investigation.[4]  Further, the trial court found that neither officer advised Saenz that he was free to leave at any time, and that Saenz was in the back of the police car for "12–18 minutes or longer" before being questioned by Officer Sanders.[5]  We afford "almost total deference" to the trial court's assessments of historical fact because they turn on an evaluation of the officers' credibility and demeanor and they are supported by the record.  *See Baird*, 398 S.W.3d at 226.

Deferring to the trial court's findings, we conclude that the case fits within all four situations that may constitute custody under *Dowthitt*.  First, Saenz was "physically deprived of his freedom of action" in a "significant way" when he was locked in the back of the patrol car for "12–18 minutes or longer."  *See Dowthitt*, 931 S.W.2d at 255.  Second, Officer Bintliff instructed Saenz not to leave.  *See Saenz*, 411 S.W.3d at 496 ("If the trial court's future findings determine that Officer Bintliff told appellee that he was not free to leave, then this case could be similar to the second situation in *Dowthitt* based on evidence that appellee was in the back seat of the patrol car, was not free to leave, and was told that he could not leave.").  Third, by locking Saenz in the patrol car and telling him he was not free to leave, the officers "create[d] a situation that would lead a reasonable person to believe that his freedom of movement has been significantly

---

[4] As noted, Officer Bintliff replied "yes" when asked by defense counsel whether, "when you put him in the back of your car, you told him that he could not leave, for him to wait there and stay there until further investigation continued?"  However, the trial court stated in its supplemental findings of fact that it "cannot enter findings regarding whether Officer Bintliff told Defendant Clint Saenz to wait while he continued investigati[ng]" because "Officer Bintliff's answer to a compound question is ambiguous."

[5] The trial court's initial supplemental findings of fact stated that Saenz was "*in custody* for approximately 20 minutes prior to his interrogation by Officer Sanders" (emphasis added).  To the extent this finding constitutes a conclusion of law as to whether Saenz was in custody in a legal sense at the time he made the challenged statements, we do not give deference to that conclusion.  Whether Saenz was legally in custody such that the officers were required to read *Miranda* rights before interrogating him is a question of law that we review de novo.  *See State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013).

9

restricted." *Dowthitt*, 931 S.W.2d at 255. Fourth, there was probable cause to arrest Saenz for public intoxication or driving while intoxicated, *see* TEX. PENAL CODE ANN. § 49.02, 49.04(a) (West, Westlaw through 2013 3d C.S.), and, considering the totality of the circumstances, we find that the officers' knowledge of probable cause was manifested to Saenz by their words and deeds. *See Stansbury*, 511 U.S. at 325 (noting that an officer's knowledge of probable cause may be manifested to the suspect "by word or deed"); *Saenz*, 411 S.W.3d at 496 ("Rather than focusing on one discrete circumstance, such as an officer's silence when he places a suspect in his patrol car, the court of appeals should have examined the totality of the circumstances to determine whether a reasonable person would have believed that he was under restraint to the degree associated with a formal arrest."). In particular, Officer Bintliff manifested his knowledge of probable cause to arrest Saenz when he thrice instructed Saenz—who was illegally parked across two handicapped parking spaces and who exhibited a "confused, dazed-type look"—to turn off his truck.[6]

Finally, with respect to all of the *Dowthitt* custody situations, we conclude that a reasonable person in Saenz's position at the time he made the challenged statements would have believed that he was under restraint to the degree associated with an arrest and not a mere investigative detention. *See Dowthitt*, 931 S.W.2d at 254. We reach this conclusion after considering the totality of the circumstances, *see Saenz*, 411 S.W.3d at

---

[6] In *Dowthitt*, a murder case, the court of criminal appeals determined that the appellant was in custody at the moment he admitted to police that he was "present during the murder." *Dowthitt v. State*, 931 S.W.2d 244, 256 (Tex. Crim. App. 1996). The Court reasoned that this admission represented "the point where the police had probable cause to arrest." *Id.* The Court did not explicitly discuss whether the officers' knowledge of probable cause was "manifested" to the appellant, but it noted that "a reasonable person [in the position of the suspect] would have realized the incriminating nature of the admission." *Id.* at 257. Similarly, the fact that Saenz exhibited signs of intoxication while operating a vehicle and acted antagonistically toward police would indicate to a reasonable person in Saenz's position that police had probable cause to arrest.

496, which includes the following facts: (1) Saenz had to be asked three times to turn off his truck; (2) he was detained for "12–18 minutes or longer" prior to the interrogation; (3) he was told he could not leave; (4) he was never told that he was not under arrest; and (5) the trial court did not explicitly find that Saenz was told that the reason he had to wait was so that officers could continue investigating.

For the foregoing reasons, the trial court did not abuse its discretion in concluding that Saenz was in custody at the time he made the statements or in suppressing those statements.[7]

## IV. CONCLUSION

We hereby reinstate the appeal and affirm the trial court's judgment granting Saenz's motion to suppress.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
17th day of July, 2014.

---

[7] Saenz also argued in his motion to suppress that the statements "were the product of an unlawful arrest, illegal detention and an unlawful search and seizure in direct violation of the Fourth and Fourteenth Amendments to the United States Constitution." The trial court apparently agreed, concluding that "reasonable suspicion was lacking to believe that [Saenz] was about to commit a crime when Officer Bintliff detained him and placed him in his patrol vehicle." Because of our conclusion that the trial court's granting of the motion to suppress was justified on article 38.22 grounds, we do not address the reasonable suspicion issue. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006) (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)) ("We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case."); *see also* TEX. R. APP P. 47.1.