

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00559-CR

Stanley Foster **BAKER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 15-1755-CR-A
Honorable W.C. Kirkendall, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed:  March 21, 2018

AFFIRMED

Stanley Foster Baker was convicted by a jury of continuous sexual abuse of a child and indecency with a child by sexual contact.  The sole issue presented on appeal is whether the trial court abused its discretion in denying Baker's motion to suppress.  Baker sought to suppress statements he made during an interview with two law enforcement officers in his hospital room, asserting the interview was a custodial interrogation and he did not receive the required *Miranda* warnings.  Because we hold the interview was not a custodial interrogation, we affirm the trial court's judgment.

**BACKGROUND**

Jackie Barrios, a nurse manager of a hospital trauma unit, was the first witness to testify at the suppression hearing. Barrios testified Baker was hospitalized because he attempted suicide by jumping off a bridge. Baker was first admitted to the intensive care unit on May 12, 2015, and then transferred to the trauma unit on May 23, 2015. Barrios described Baker as being alert, oriented, and able to understand questions. Barrios testified police officers called her on a daily basis requesting information regarding Baker's estimated date of discharge.

On May 27, 2015, the day the law enforcement officers interviewed Baker, Barrios stated Baker was alert and oriented. Barrios testified Baker was not in police custody in the hospital, but a hospital employee observed him twenty-four hours a day because of his suicide attempt.

On cross-examination, Barrios testified Baker reported having a history of depression. Barrios described Baker's injuries and the treatment he had been receiving. Barrios testified Baker was never in any restraints in the trauma unit, and no law enforcement officers were stationed outside of Baker's door.

Detective Jerry Grubbs, the lead detective assigned to Baker's case on May 11, 2015, was the only other witness to testify at the suppression hearing. After law enforcement officers located Baker, who had been admitted to the hospital, another detective was assigned to monitor Baker's condition on a daily basis. Detective Grubbs testified a decision was made to interview Baker on May 27, 2015, based on the report given by the charge nurse that Baker was in good spirits, talking, and coherent. Law enforcement was not guarding Baker's room, and Baker was never placed in handcuffs before or during the interview.

Detective Grubbs testified Ranger Keith Pauska accompanied him to the hospital for the interview, and after they introduced themselves, they asked Baker if he wanted to have a discussion with them. Detective Grubbs recalled asking Baker several times if he needed anything during the

interview, which lasted no longer than forty-five minutes. Detective Grubbs described Baker as being engaged in the conversation and occasionally correcting some of the information Detective Grubbs "put out there."

On cross-examination, Detective Grubbs testified he went to Baker's house on May 11, 2015, because a child protective services investigator asked him to accompany her on her initial visit. The visit was the result of outcries three girls made that Baker, their stepfather, had molested them. The purpose of the initial visit was for the investigator to drop off a packet for the children's mother.

Detective Grubbs testified that the following day, May 12, he and the investigator returned to Baker's house to have a conversation with the children's mother. The children's mother was not home, but Baker told them where she was. Detective Grubbs and the investigator made contact with the children's mother, informed her about the reason for the investigation, and arranged forensic interviews for the children that same day. Detective Grubbs testified he observed the forensic interviews from outside the room and believed the children's statements were true. Later that same day, the children underwent sexual assault examinations; however, Detective Grubbs was not present during those examinations.

Before interviewing Baker on May 27, Detective Grubbs testified he reviewed the videotapes of the forensic interviews and spoke with the sexual assault nurse examiner, who informed him of her findings and provided him with her documentation. Detective Grubbs also was present during a search of the residence during which an item of evidence was recovered corroborating one of the children's statements. When he interviewed Baker, Detective Grubbs agreed Baker was a suspect in the case, but he had not obtained a warrant because he did not feel "confident to swear out the warrant." Although Detective Grubbs believed Baker "had done something with [the] children," he was not sure about the specifics. With regard to whether Baker

asked for an attorney, Detective Grubbs testified Baker asked whether an attorney should be present, and he told Baker they were just having a conversation and "it was up to him." He also told Baker if he was not comfortable in answering the questions, they could stop at any time. Detective Grubbs testified he prepared the affidavit to obtain an arrest warrant a couple of days after the interview when he was informed that Baker was going to be discharged from the hospital. Detective Grubbs stated Baker would have been free to leave the hospital on May 27 or May 28, but he would have made additional efforts to obtain the warrant and to find Baker's location so Baker could be served with the warrant. Detective Grubbs did not recall whether he told Baker he was free to leave the hospital.

Following the witnesses' testimony, the trial court watched and listened to video and audio recordings of the interview which were admitted into evidence. A transcript of the interview also was admitted into evidence. After hearing the testimony and the recordings, the trial court denied Baker's motion to suppress stating:

> THE COURT: All right. The following will be the ruling of the Court. I make the following findings of fact and conclusions of law:
> The defendant, during this statement, appeared to be alert and oriented as to time and circumstances. He was not under arrest or in custody. He freely and voluntarily made the statement that was offered, and the motion to suppress is overruled, except as to two portions. One, where he was questioned about other victims and the Ranger made the statement that there's never not others, which would be approximately Page 43, Line 10 to Line 22, and then when he was questioned about child pornography and he denied it, which would be approximately Page 44, Line 6, to Page 44, Line 25, and when he was — the Officer Grubbs made the statement that he was going to remember more stuff in time, which is Page 46, Line 22 to 25.

The trial court subsequently entered written findings of fact and conclusions of law containing the first three sentences of its verbal ruling. Baker appeals, arguing he was in custody while being interviewed; therefore, he was entitled to his *Miranda* warnings.

## STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). We afford almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor, but we review de novo the trial court's application of the law to fact questions that do not turn on credibility and demeanor. *Furr*, 499 S.W.3d at 877; *Alford*, 358 S.W.3d at 652. "The decision as to whether custodial questioning constitutes 'interrogation' under *Miranda* is a mixed question of law and fact, and we defer to the trial court's fact findings that turn on an evaluation of credibility and demeanor." *Alford*, 358 S.W.3d at 653. "If credibility and demeanor are not necessary to the resolution of an issue, whether a set of historical facts constitutes custodial interrogation under the Fifth Amendment is subject to *de novo* review because that is an issue of law: it requires application of legal principles to a specific set of facts." *Id*.

## APPLICABLE LAW REGARDING CUSTODY

The United States Supreme Court has held that an individual is "in custody" for *Miranda* purposes if, under the circumstances, a reasonable person would believe "[his] freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). The custody determination must be made on an ad hoc basis after considering all of the objective circumstances. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

A person may be in custody under any of these four general situations:

(1) when the suspect is physically deprived of his freedom in any significant way,

(2) when a law enforcement officer tells the suspect he cannot leave,

(3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted, and

(4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave.

*Id.*; *Martinez-Hernandez v. State*, 468 S.W.3d 748, 757–58 (Tex. App.—San Antonio 2015, no pet.). "The first three situations require that the restriction on a suspect's freedom of movement must reach 'the degree associated with an arrest' instead of an investigative detention." *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013) (quoting *Dowthitt*, 931 S.W.2d at 255). "The fourth situation requires an officer's knowledge of probable cause to be manifested to the suspect." *Id.* "Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers." *Dowthitt*, 931 S.W.2d at 255. "Custody, however, is not established by the fourth situation unless the manifestation of probable cause combined with other circumstances of the interview, such as duration or factors of the exercise of police control over a suspect, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Saenz*, 411 S.W.3d at 496 (internal quotations omitted).

## ANALYSIS

Baker argues he was in custody because he could not leave the hospital room and "the officers gave no indication that they were willing to leave his room." Baker also focuses on Detective Grubbs's admission that he believed Baker had done something with the children and argues the officers had probable cause to arrest him.

With regard to Baker's first argument, "police questioning of a defendant while they are being treated in a hospital, without more, does not automatically rise to the level of a custodial interrogation." *LaCarbonera v. State*, No. 08-13-00262-CR, 2015 WL 2437862, at *3 (Tex. App.—El Paso May 20, 2015, no pet.) (not designated for publication); *see also Joyner v. State*,

No. 04-16-00677-CR, 2017 WL 4158086, at *6 (Tex. App.—San Antonio Sept. 20, 2017, no pet.) (not designated for publication) (holding detectives' questioning of gunshot victim in hospital did not constitute custody); *Martinez v. State*, 496 S.W.3d 215, 219-20 (Tex. App.—Houston [14th Dist.] 2016, pet. filed) (holding restraint on appellant's freedom did not constitute custody "because the physical deprivation of Appellant's freedom was due to medical treatment, not the actions of law enforcement"); *Yarborough v. State*, 178 S.W.3d 895, 901-02 (Tex. App.—Texarkana 2005, pet. ref'd) ("Yarborough's movement was restrained only to the extent that he was receiving medical treatment for his stab wounds."). Furthermore, even if we assume the officers' knowledge of probable cause was manifested to Baker, the record must demonstrate that "other circumstances of the interview, such as duration or factors of the exercise of police control over a suspect, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Saenz*, 411 S.W.3d at 496 (internal quotations omitted). As the United States Supreme Court has held the "compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted" determines whether a suspect is in custody. *Stansbury v. California*, 511 U.S. 318, 323 (1994).

In this case, Baker points to no evidence that would lead a reasonable person to believe he was under restraint to a degree associated with an arrest. The interview lasted only about forty-five minutes. The officers repeatedly told Baker they were simply trying to obtain his version of the events. Initially, Ranger Pauska told Baker they wanted to know why he attempted to take his own life. Even after Baker admitted he "did some things sexual in nature" to the children, Ranger Pauska reiterated that the interview was "all voluntary. You're not under arrest." Detective Grubbs reinforced the voluntary nature of the interview, telling Baker "You're not under arrest. You're not in custody. But like the ranger was talking about, there's always two or three sides to the story. And we got the girls' side, now — now I want to hear your side. Okay? That — that's

all we're doing is having a conversation." The officers also told Baker that he could terminate the interview at any time. Specifically, Detective Grubbs told Baker "if we start talking about something that you don't want to talk about, just tell us to stop. Okay?" Finally, upon the completion of the interview, the officers thanked Baker and left his room. Having reviewed the record as a whole and considering all of the objective circumstances, we hold Baker was not in custody while being interviewed by the officers. Therefore, the trial court did not err in denying Baker's motion to suppress.

## CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice

DO NOT PUBLISH