COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RICHARD RIVERA, | § | No. 08-12-00160-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| V. | | 396th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC# 1262439R) |
| | § | |

## **O P I N I O N**

Richard Rivera appeals his convictions of murder (Count II), aggravated robbery (Count III), and burglary of a habitation (Count IV). A jury acquitted Appellant of capital murder (Count I), but found Appellant guilty of Counts II, III, and IV and assessed his punishment at imprisonment for twenty-eight years' on each count. The Texas Supreme Court transferred the appeal from the Second Court of Appeals to the Eighth Court of Appeals pursuant to a docket equalization order.[1] We affirm.

### FACTUAL SUMMARY

The evidence at trial showed that Appellant, Angel Villegas, and Jose Sifuentes forcibly entered an apartment at approximately 4:00 a.m. on December 11, 2009 for the purpose of robbing someone who had taken prescription pills and approximately $200 from Appellant

---

[1] We will decide the case in accordance with the precedent of the Second Court of Appeals. *See* TEX.R.APP.P. 41.3.

during a bad drug transaction. Appellant led his co-defendants to the wrong apartment and Sifuentes shot and killed Francisco Tanguma who had no connection to Appellant or the drug transaction.

A few days before the murder, Blaine Williams, Reggie Dean, and Appellant drove to the King's Landing apartment complex in Arlington. Appellant was looking for the apartment of someone who had ripped him off by giving him counterfeit money for prescription pills. After Appellant and Dean returned to the car, Appellant told Williams they were going back to the apartment later to rob the guy who had ripped him off and someone else was going to bring a gun. Appellant was texting someone named Angel when he made the statement about someone bringing a gun.

In December of 2009, Appellant called Angel Villegas and told him that he had been "set up" by a friend and robbed during a drug transaction. Appellant told Villegas that the robbers had taken some prescription pills and approximately $200 from him. Appellant told Villegas that he wanted to get back his property and he asked if Villegas was willing to participate in a robbery with him for that purpose. Villegas told him that he would. Appellant told Villegas that there were electronics, a large flat screen TV, and drugs in the apartment they were going to rob. Villegas called "dibs" on the TV. Appellant also asked Villegas if he had a weapon. Villegas replied that he had a military-type rifle[2] and he would bring it. Villegas had recently shown Appellant the same rifle. Villegas described the rifle as being black and approximately two feet in length with a five inch clip.

After getting off the phone, Villegas told his cousin, Jose Sifuentes, about his

---

[2] Witnesses at trial described the rifle as an AR-15.

conversation with Appellant and he asked Sifuentes to go with him. In another conversation, Appellant told Villegas that he had another friend, Reggie, who was going to meet up with them and he had his own weapon, a 9mm handgun. Based on his conversations with Appellant, Villegas understood that the plan was to commit a robbery with a deadly weapon and Villegas took his AR-15 with him "[j]ust in case . . . [s]omething was to happen."

Villegas and Sifuentes went to Appellant's house and met with him for a few minutes. Villegas had the AR-15 with him wrapped in a jacket, but Appellant saw it. They drove to the apartment in a white Dodge Charger. Appellant drove, Villegas sat in the front passenger seat, and Sifuentes sat in the back. As they drove, they discussed their plan that Appellant would kick down the door, Sifuentes would enter first, and they would go inside and take whatever they wanted. After they got to the apartment complex, they drove around while waiting for Reggie to meet them, but after waiting for a few minutes they went to the apartment without him. Appellant led them to the apartment and he kicked open the door. Sifuentes, armed with the AR-15, went in first and Appellant followed him. Villegas heard what sounded like someone getting out of bed and Sifuentes entered the bedroom and fired the AR-15. Villegas saw Sifuentes standing over the victim, Francisco Tanguma, with the AR-15 pointed at him while demanding money and drugs. Sifuentes also kicked Tanguma above the waist one time. Tanguma told Sifuentes he did not know what they were talking about. Villegas looked around the apartment for anything valuable and after speaking with Appellant they decided to take a pair of large speakers. Appellant and Villegas loaded the speakers into the car while Sifuentes stood over the victim. Sifuentes took Tanguma's wallet and cell phone. After they returned to Appellant's

house, Villegas told Appellant to keep his mouth shut and put it behind him. Villegas got rid of the cell phone, the speakers, and the rifle.

A couple of days after the murder, Appellant talked to Blaine Williams. Appellant said they went to the apartment and after he kicked the door open, "Angel's homeboy" ran inside and shot someone in the leg with the AR-15. Williams talked to Appellant again after learning that Tanguma had died and he recalled that Appellant showed no emotion and appeared "normal."

## CHARGE ERROR

In his first two issues, Appellant argues that the trial court erred by failing to instruct the jury on assault with bodily injury as a lesser-included offense of murder and theft as a lesser-included offense of aggravated robbery because he did not know that his co-defendant Sifuentes had the gun.

*Relevant Law and Standard of Review*

A trial court's decision to submit or deny an instruction on a lesser-included offense is reviewed for an abuse of discretion. *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex.Crim.App. 2004). An offense is a lesser-included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

- 4 -

TEX.CODE CRIM.PROC.ANN. art. 37.09 (West 2006). We utilize a two-pronged test to determine whether a charge on a lesser-included offense should be given: (1) Is the requested charge for a lesser-included offense of the charged offense? (2) Is there trial evidence that supports giving the instruction to the jury? *Rice v. State*, 333 S.W.3d 140, 144 (Tex.Crim.App. 2011); *McKinney v. State*, 207 S.W.3d 366, 370 (Tex.Crim.App. 2006). If facts are elicited during trial that raise an issue of the lesser-included offense, and the charge is properly requested, then a charge must be given. *Ross v. State*, 861 S.W.2d 870, 877 (Tex.Crim.App. 1993)(op. on reh'g).

*Assault*

We begin by examining Appellant's contentions related to the lesser-included offense of assault with bodily injury. The first step is to determine whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Rice*, 333 S.W.3d at 144; *Hall v. State*, 225 S.W.3d 524, 531 (Tex.Crim.App. 2007). This is a question of law, and it does not depend on the evidence to be produced at trial. *Rice*, 333 S.W.3d at 144.

Texas has adopted the cognate pleadings approach to the first step of the lesser included offense analysis: the elements and the facts alleged in the charging instrument are used to find lesser-included offenses. *Rice*, 333 S.W.3d at 144. The first prong is satisfied if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense; or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, which are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. *Ex parte Watson*, 306 S.W.3d 259, 273

- 5 -

(Tex.Crim.App. 2009). We will examine the statutory elements of the charged offense as modified by the indictment and determine whether the elements of the claimed lesser included offense are functionally the same as or less than those required to prove the charged offense. *Hayward v. State*, 158 S.W.3d 476, 478-79 (Tex.Crim.App. 2005).

Appellant asserts that assault is a lesser-included offense of murder under Section 19.02(b)(2). Paragraph Two of Count II charged Appellant with murder under Section 19.02(b)(2) by alleging that Appellant intentionally, with the intent to cause serious bodily injury to Francisco Tanguma, committed an act clearly dangerous to human life, namely, by shooting him with a firearm, which caused the death of Francisco Tanguma. *See* TEX.PENAL CODE ANN. § 19.02(b)(West 2011). A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX.PENAL CODE ANN. § 22.01(a)(1)(West Supp. 2014). We conclude that the statutory elements of assault are included within the offense of murder under Section 19.02(b)(2) because the two offenses have the same culpable mental state and bodily injury can be a subset of serious bodily injury. *Hayward*, 158 S.W.3d at 479 ("It is possible, under the right set of circumstances, for the statutory elements of assault to be included within a murder because the two offenses could have the same culpable mental state and bodily injury can be a subset of serious bodily injury.").

The second step of the lesser-included-offense analysis is to determine if there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Rice*, 333 S.W.3d at l45; *Mathis v. State*, 67 S.W.3d 918, 925 (Tex.Crim.App. 2002). In other words, the evidence must establish the lesser-

included offense as a valid, rational alternative to the charged offense. *Rice*, 333 S.W.3d at 145; *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Crim.App. 2000).

Appellant's argument is limited to his assertion that he did not know Sifuentes had a firearm, and therefore, the jury could have rationally found him not guilty of murder. The court's charge included an instruction on the law of parties. Further, the court's charge instructed the jury that "if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose, and was one that should have been anticipated as a result of the carrying out of the conspiracy." *See* TEX.PENAL CODE ANN. § 7.02(b)(West 2011). We understand Appellant to argue that, since he did not know Sifuentes had a gun, the jury could have found that Appellant could not have anticipated that a murder would occur as a result of carrying out the conspiracy to commit burglary of a habitation and robbery. Even if we assume for the sake of argument that there is evidence supporting Appellant's claim he did not know Villegas or Sifuentes had a gun, he does not direct our attention to any evidence showing he is guilty only of assault causing bodily injury. In fact, it is unclear from Appellant's brief the exact nature of the assault causing bodily injury he claims the jury should have been allowed to consider. There is evidence that Sifuentes kicked the victim after he shot him, but this evidence does not warrant submission of a lesser-included offense of assault because the conduct falls outside of the assaultive conduct alleged in the indictment, namely, shooting the victim with a firearm. *See Hayward*, 158 S.W.3d at 479 (where indictment alleged defendant caused the victim's death by

- 7 -

stabbing him with a knife or piece of glass, defendant's claim that she punched the victim did not raise the lesser-included offense of assault causing bodily injury).  The trial court did not err by refusing to instruct the jury on the lesser-included offense of assault.  Issue Two is overruled.

*Theft*

Appellant next argues that he was entitled to an instruction on theft.  Theft is a lesser-included offense of aggravated robbery.  *See Jacob v. State*, 892 S.W.2d 905, 909 (Tex.Crim.App. 1995); *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App. 1994).  The only issue, then, is whether the record contains some evidence to support an instruction for theft.

Count III of the indictment charged Appellant with aggravated robbery under Section 29.03(a)(2) by alleging that he intentionally or knowingly, while in the course of committing theft of property[3] and with intent to obtain or maintain control of property, caused bodily injury to Francisco Tanguma by shooting him with a firearm[4] and Appellant used or exhibited a deadly weapon, namely, a firearm.[5]  Thus, the indictment alleges Appellant committed aggravated robbery by committing robbery under Section 29.02(a)(1) and by using or exhibiting a deadly weapon.  The trial court instructed the jury on the law of parties and the application paragraph permitted the jury to find Appellant guilty of aggravated robbery as a party.  Appellant again asserts that he did not know Sifuentes had a firearm, and therefore, the jury could have rationally

---

[3] A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property. TEX.PENAL CODE ANN. § 31.03 (West Supp. 2014).

[4] A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he:  (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  TEX.PENAL CODE ANN. § 29.02(a)(1)-(2)(West 2011).

[5] A person commits aggravated robbery if he commits robbery as defined by Section 29.02 and he uses or exhibits a deadly weapon.  TEX.PENAL CODE ANN. § 29.03(a)(2)(West 2011).

found him not guilty of aggravated robbery.

In support of his argument that Appellant did not know Villegas or Sifuentes had a gun, Appellant cites to the following: Danielle Friend was confused about who had the gun and shot Tanguma; Sifuentes came along at the request of Villegas, not Appellant; Appellant drove the vehicle they took to the apartment and Sifuentes sat in the back seat with the gun; Villegas had the gun concealed in a jacket and Sifuentes removed it from the jacket before they got out of the car; Villegas testified Appellant saw the rifle but he later said he "assumed" Appellant knew they had the gun, and he did not actually see Appellant observe him or Sifuentes with the gun; Appellant kicked the apartment door open and Sifuentes entered first; and Villegas was shocked when Sifuentes shot Tanguma because he and Appellant had never discussed shooting anyone. As observed by the State, the evidence must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense. *Cavazos v. State*, 382 S.W.3d 377, 385 (Tex.Crim.App. 2012). Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense. *Id.* The evidence relied on by Appellant does not affirmatively show Appellant did not know Sifuentes had a gun when they entered the apartment and it does not rise above the level of requiring the jury to speculate regarding Appellant's knowledge. Because the evidence does not permit a rational jury to find Appellant is guilty of only the lesser-included offense, Appellant was not entitled to an instruction on theft. Issue One is overruled.

**MOTION TO SUPPRESS**

In Issue Three, Appellant contends that the trial court erred by denying his motion to suppress a pair of shoes seized during a search of his bedroom. Appellant argues that he did not consent to a search of the bedroom where the officers found the shoes.

The trial court conducted a hearing outside the presence of the jury to determine the admissibility of a pair of shoes taken by police officers from Appellant's bedroom. Tommy Le Noir, a homicide detective with the Arlington Police Department, obtained an arrest warrant for Appellant and he and other police officers went to an address in Grand Prairie, Texas on December 12, 2009 to arrest Appellant. Detective Le Noir spoke with Appellant and asked him for consent to search his bedroom. Appellant consented to a search of his bedroom and he signed a written consent to search form. Appellant initially directed the officers to a bedroom and they entered it but did not find anything of evidentiary value. One of the other officers noticed the adjacent bedroom door had a sign on it which stated "Trick Rick" and she could smell an odor of marihuana emanating from that room. Detective Le Noir spoke to Appellant and asked whether he had lied about which bedroom was his. Appellant admitted he had lied and said the other bedroom was his. The officers entered that bedroom and found a pair of black shoes which appeared to be consistent with the footprint on the door to Tanguma's apartment. At the conclusion of the hearing, Appellant objected to the admission of his shoes on the ground they were seized without a warrant and without his consent. The trial court overruled that objection.

*Standard of Review and Applicable Law*

We review a ruling on a motion to suppress using a bifurcated standard of review.

*Valtierra v. State*, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010); *Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997). An appellate court must give almost total deference to the trial court's assessments of historical fact and conclusions of law with respect to mixed questions of law and fact that turn on credibility and demeanor. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex.Crim.App. 2013); *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex.Crim.App. 2012). In contrast, an appellate court engages in a *de novo* review of mixed questions of law and fact that do not turn on credibility and demeanor. *Saenz*, 411 S.W.3d at 494; *Ortiz*, 382 S.W.3d at 372.

The Fourth Amendment to the United States Constitution guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Meekins v. State*, 340 S.W.3d 454, 458 (Tex.Crim.App. 2011), *quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). One of the recognized exceptions is a search conducted with a person's voluntary consent. *Meekins*, 340 S.W.3d at 458, *citing Schneckloth*, 412 U.S. at 219, 93 S.Ct. at 2043-44; *Guevara v. State*, 97 S.W.3d 579, 582 (Tex.Crim.App. 2003). To show that the search was made with the property owner's consent, the State must prove by clear and convincing evidence, based on the totality of the circumstances, that the owner gave consent freely and voluntarily. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App. 2000).

*Scope of the Consent to Search*

Appellant argues that he consented only to a search of the bedroom he initially identified

- 11 -

to the officers as his and he did not consent to a search of his bedroom. This argument raises a question regarding the scope of his consent to search and whether the officers exceeded the scope of the consent by searching Appellant's bedroom.

The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect? *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991). Because the test is one of objective reasonableness, a court reviewing the totality of the circumstances of this particular interaction does so without regard for the subjective thoughts or intents of either the officer or the citizen. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex.Crim.App. 2011). The scope of a search is usually defined by its expressed object. *Weaver*, 349 S.W.3d at 526. If police rely on consent as the basis for a warrantless search, "they have no more authority than they have apparently been given by the consent." *Id., quoting* 4 Wayne R. LaFave, SEARCH AND SEIZURE § 8.1(c) at 19 (4th ed. 2004). While it is important to take into account any limitations on the scope of the search, a person's silence in the face of an officer's further actions may imply consent to that further action. *Id.*

It is undisputed that Appellant consented to a search of "his bedroom" even though he subsequently misdirected the officers to a bedroom which was not his. Under the objective reasonableness test, the typical reasonable person would have understood that he gave the officers consent to search "his bedroom," not the bedroom of someone else in the residence. The trial court did not err by denying Appellant's motion to suppress and overruling his objections to

admission of the evidence. Issue Three is overruled. Having overruled each issue present on appeal, we affirm the judgment of the trial court.


October 8, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. Not Participating

(Do Not Publish)