COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MELERIE VILLALOBOS, | § | No. 08-17-00184-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Criminal Court No. 2 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20150C00038) |
| | § | |

## **O P I N I O N**

Appellant Melerie Villalobos was convicted of DWI, second offense. On appeal, she contends: (1) the trial court abused its discretion in denying her motion to suppress because she was in custody at the time she made the incriminating statements to police; and (2) the trial court failed to submit findings and conclusions that were sufficient to allow this Court to review the trial court's application of the law to the facts surrounding its denial of the motion to suppress. We affirm.

## **BACKGROUND**

This case involves a DWI stop on New Year's Eve. Officer Ricardo Machuca was working an extra-duty shift in the early morning hours of January 1, 2015. He was one of the

additional officers sent out every year on New Year's Eve to stop individuals who are driving while intoxicated. Around 2:00 a.m., Machuca observed a vehicle travelling in the opposite lane at a high rate of speed. His radar indicated the vehicle was going 51 mph in a 35-mph zone, so he initiated a traffic stop after activating his emergency lights and the dash-cam recorder in his patrol car. The vehicle pulled over onto a side street and came to a complete stop, and Machuca approached the driver.

Apellant Melerie Villalobos was the driver of the vehicle. Machuca's dash cam-corder recorded the encounter between Machuca and Villalobos. Machuca informed her he had pulled her over for speeding and asked her for her driver's license and insurance, however, Villalobos told him she did not have a driver's license. Machuca observed she slurred her words when responding and had red, bloodshot eyes. He also noticed a strong smell of alcohol coming from within the vehicle. Machuca asked her why she did not have a license and asked how much she had had to drink that night. She responded that she had consumed five beers and two shots and had just left a bar called Smokey's where she had gotten into a fight with her boyfriend. Villalobos provided Machuca with her name and date of birth, and the officer returned to his vehicle to confirm her identity.

While back at his vehicle, Machuca radioed for assistance from an officer certified to conduct field-sobriety tests. Officer Anthony Alegre arrived to help Machuca's investigation within a few minutes. Alegre instructed Villalobos to get out of her vehicle and had her perform Standardized Field Sobriety Tests. While taking the tests, Villalobos repeatedly complained that she was cold. Alegre offered several times to allow Villalobos to perform the tests at the police station instead of on the cold streets, telling her that she was not under arrest but was only being

2

detained. In each instance, she refused and asserted she wanted to go ahead with the tests. Ultimately, Villalobos failed the tests, and Alegre placed her under arrest for driving while intoxicated.

Prior to trial, Villalobos moved to suppress evidence of her statements that she had just left a bar and had consumed five beers and two shots, arguing that she was under arrest at the time Machuca asked her how much she had had to drink and had not been read her *Miranda*[1] warnings. The trial court denied the motion. A jury found Villalobos guilty of driving while intoxicated. The trial court placed Villalobos on community supervision for a period of fifteen months, assessed a $500 fine, court costs of $492, and restitution in the amount of $96. This appeal followed.

## DISCUSSION

In two issues, Villalobos contends that the trial court: (1) abused its discretion in denying her motion to suppress because she was in custody at the time she made the incriminating statements; and (2) failed to submit findings and conclusions that are sufficient to allow this Court to review its application of the law to the facts surrounding its denial of the motion to suppress.

### Custody Under *Miranda*

#### *Standard of Review*

We review a trial court's ruling on a motion to suppress evidence for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In doing so, we afford almost total deference to the trial court's determination of historical facts when those facts are supported by the record, and we will uphold the trial court's decision if it is correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 739–40 (Tex.Crim.App. 2007); *see*

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). We apply de novo review to the trial court's ultimate legal conclusions, provided the trial court did not resolve them based on an evaluation of credibility and demeanor, giving due deference to the trial court's factual assessment of the circumstances. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex.Crim.App. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

### *Applicable Law*

A person in custody must be informed in clear and unequivocal terms that he has the right to remain silent before he is subjected to interrogation. *Miranda*, 384 U.S. at 467. But a defendant seeking the suppression of a statement on *Miranda* grounds has the threshold burden of clearly establishing that his statements were given during custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007). A person is "in custody" for *Miranda* purposes when there is either (1) a formal arrest or (2) a restraint on the person's freedom of movement to the degree an objectively reasonable person would otherwise associate with a formal arrest. *Thai Ngoc Nguyen v. State*, 292 S.W.3d 671, 677 (Tex.Crim.App. 2009). The Court of Criminal appeals has given us four non-exclusive situations that may constitute custody:

(1) when the suspect is physically deprived of his freedom of action in any significant way;

(2) when a law enforcement officer tells the suspect that he cannot leave;

(3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and

(4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex.Crim.App. 1996). The first three situations will

4

demonstrate custody only where the defendant's freedom of movement is restricted to the degree associated with formal arrest, as opposed to a merely investigative detention. *Id*. The fourth situation will only support a finding of custody where the officer's knowledge of probable cause to arrest is conveyed to the suspect or otherwise made clear to him. *Id*. We measure the existence of custody based on objective circumstances and not on the subjective perceptions of either law enforcement or the suspect, unless the interrogator conveys his subjective views to the suspect or otherwise makes them manifest. *Saenz,* 411 S.W.3d at 496–97. Once the defendant establishes that he was in police custody, the burden shifts to the State to prove the defendant either received the appropriate *Miranda* warnings or else that they questioned the defendant pursuant to a valid *Miranda* exception. *Wilkerson v. State*, 173 S.W.3d 521, 532 (Tex.Crim.App. 2005).

While a traffic stop significantly curtails the freedom of action of an individual, and therefore constitutes a seizure under the Fourth Amendment, a person subject to a traffic stop or other investigatory detention is not automatically considered "in custody" for purposes of *Miranda*. *State v. Ortiz*, 382 S.W.3d 367, 374 (Tex.Crim.App. 2012); *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex.Crim.App 1997)(fact that defendant becomes focus of a DWI investigation during a stop does not, standing alone, give rise to custody)(*citing Berkemer v. McCarty*, 468 U.S. 420, 423 (1984)). But that does not mean a traffic stop or investigatory detention cannot evolve into full custody and trigger *Miranda* protections. *Saenz*, 411 S.W.3d at 496–97. We make that determination by considering the totality of the circumstances. *Id*.

### *Analysis*

Here, Villalobos asserts all four *Dowthitt* situations were present when she made her incriminating statements to Officer Machuca. She contends: (1) she was physically deprived of

5

her freedom of action by being forced to wait in her vehicle for the second officer to arrive to perform the field-sobriety tests; (2) she was indirectly told she could not leave because Officer Alegre told her she had the choice of performing the tests either there or at the police station; (3) Officer Machuca created a situation that would lead a reasonable person to believe her freedom of movement had been significantly restricted by making her wait for a second officer after she had admitted to coming from a bar and consuming multiple alcoholic drinks that evening; and (4) it was unclear when the officer's reasonable suspicion matured into probable cause.

But Villalobos fails to argue her point in light of the requirement that the defendant's freedom of movement be restricted to the degree associated with formal arrest, as opposed to an investigative detention, or that the officer's knowledge of probable cause to arrest be made clear to the defendant. Here, the trial court found that: Officer Machuca pulled Villalobos over for speeding; she could not produce a driver's license when asked; Machuca noticed she exhibited signs of intoxication during this exchange; Machuca asked her if she had been drinking and she replied that she had just come from a bar and had consumed five beers and two shots; Machuca requested assistance from an officer certified to perform field-sobriety tests; Villalobos was waiting in her vehicle from the time she was pulled over to when she was asked to perform the tests; when Officer Alegre arrived and conducted the tests, he informed Villalobos she had the option to perform the tests at the station because she was only being detained and was not under arrest; and Villalobos failed the field-sobriety tests and only then was placed under arrest and read her statutory warnings. These findings are supported in the record by the testimony of Officers Machuca and Alegre, and by the dashcam videos of the incident. Accordingly, we must give these historical findings almost total deference. *Stevens*, 235 S.W.3d at 739–40.

As already noted, a DWI investigation conducted during a traffic stop does not, standing alone, give rise to custody. *Stevenson*, 958 S.W.2d at 829; *see also McRae v. State*, 152 S.W.3d 739, 749 (Tex.App—Houston [1st Dist.] 2004, pet. ref'd)("A DWI investigation that includes questioning and field-sobriety tests does not, without more, rise to the level of a custodial interrogation.")(*citing Stevenson*, 958 S.W.2d at 828–29). At no point during the investigation or her performance of field-sobriety tests was Villalobos's freedom of action restricted to the degree associated with formal arrest, as demonstrated by the fact that she was allowed to wait in her vehicle while waiting for Officer Alegre and by his statements during the field-sobriety tests that she was not under arrest but was only being detained. *See Dowthitt*, 931 S.W.2d at 255; *Stevenson*, 958 S.W.2d at 829. The officers also did not communicate any knowledge of probable cause to arrest Villalobos during the investigation or otherwise make clear to her they had probable cause to arrest her. Applying de novo review to the determination on custody, the trial court did not err in determining Villalobos was not in custody at the time she made incriminating statements to Officer Machuca. *Saenz,* 411 S.W.3d at 496–97. Accordingly, Villalobos's first issue is overruled.

**Sufficiency of the Trial Court's Essential Findings**

In her second issue, Villalobos contends the trial court's findings of fact and conclusions of law, as issued, are insufficient for this Court to adequately review the trial court's application of the law to the facts.

***Applicable Law***

In order that an appellate court may adequately review a trial court's ruling on a motion to suppress, the trial court is required to state its "essential findings" justifying its ruling on the

motion. *Saenz*, 411 S.W.3d at 495; *State v. Elias*, 339 S.W.3d 667, 674 (Tex.Crim.App. 2011)(*citing State v. Cullen*, 195 S.W.3d 696, 699 (Tex.Crim.App. 2006)). "Essential findings" are "findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *Elias*, 339 S.W.3d at 674. When a trial court fails to issue essential findings, the appropriate remedy is to abate the proceedings and remand the case to the trial court for additional findings sufficient for review. *Saenz*, 411 S.W.3d at 495.

### *Analysis*

Here, Villalobos contends the trial court failed to state its essential findings adequately enough for our Court to review its determination of whether the facts surrounding Officer Machuca's questioning of her gave rise to custody for *Miranda* purposes. Specifically, she contends the trial court failed to explain what facts gave officers reasonable suspicion or probable cause, or what facts gave rise to reasonable suspicion or probable cause. As summarized above, the trial court issued the following findings and conclusions:

1. The Court finds that Officer Machuco, of the EPPD, was proceeding eastbound on Montwood, near Lee and Montwood, El Paso, Texas, and on that early morning of January 1st, 2015, noticed a Jeep, driven by the Defendant, traveling at a high rate of speed, passing vehicles in a westerly direction on Montwood Avenue;

2. The Court finds that the officer turned around and proceeded to follow the defendant on Montwood Avenue and confirmed her speed at approximately 51 miles per hour in a 35-mile-per-hour zone, and further determines that he turned on his overhead lights and siren;

3. The Court find that the defendant pulled into Jacqueline Ann Street and parked her car on the curbside. The Court finds that after a few seconds, Officer Machuca approaches the vehicle on the driver's side and asks the defendant for

8

proof of insurance and driver's license. After a few seconds, the defendant indicates she has no license or could not produce a license. Further, the officer engages a question as to where she was coming from and if she had been drinking, to which the defendant responds that she was at Smokey's and had five beers and two shots (State's Exhibit 1);

4. The Court finds that during this engagement, the officer detects a strong odor of alcohol about her person. The Court finds that Officer Machuca then calls a TOM unit from the DWI Task Force to assist him further in the investigation within a reasonable time. The Court finds that Officer Alegre, of the EPPD, arrives and confers with Officer Machuca. At this time, the defendant has been inside of her vehicle. The Court finds, thereafter, the defendant is asked to exit her vehicle to begin SFSTs conducted by Officer Alegre. The defendant performs the HGN and then before the one-leg stand and heel-to-toe test is administered, finds that the officer advised the defendant that because it is cold that the next battery of tests could be performed at the station and not in the field, since she was only being detained and not arrested (State's Exhibit 4). The Court finds that on many occasions, it was stated to her that she could perform these tests at the police station, but that she would rather perform them at the scene;

5. The Court finds that Officer Machuca obtained her coat and provided it to the defendant before the tests are administered. The defendant appears to have failed the tests or had difficulty performing the tests. The Court further finds that Officer Alegre explained and demonstrated the heel-to-toe test and one-leg stand test to the defendant (State's Exhibit 4). The Court finds that Officer Alegre read the statutory warnings (State's Exhibit 2 and State's Exhibit 4). The Court finds that the defendant was administered the Miranda warnings (State's Exhibit 4). The Court then finds that the defendant was arrested and taken to the police station. At the station, she was read State's Exhibit 3, wherein she signed the document consenting to a specimen of her blood.

.                    .                    .

1. The Court concludes that Officer Machuca had reasonable suspicion to detain the defendant;

2. The Court concludes that the statements made by the defendant were made while the defendant was detained along a public street, and no field sobriety

9

tests had been ordered prior to these statements and were not a result of custodial interrogation;

3. The Court concludes that the officers had probable cause to arrest the defendant for driving while intoxicated;

4. The Court further determines that the defendant voluntarily signed the consent form to give a specimen of her blood.

These findings and conclusions allow us on review to determine: (1) what Officers Machuca and Alegre did, said, and asked; (2) when their actions occurred; (3) what Villalobos did and said; and (4) when her actions occurred. Accordingly, they establish the relevant circumstances surrounding Villalobos's detention and questioning, and thus sufficiently provide this Court with "a basis upon which to review the trial court's application of the law to the facts." *Elias*, 339 S.W.3d at 674. Because these findings are adequate to allow us to determine whether Villalobos was in custody at the time of the complained-of statements, Issue Two is overruled. *Nguyen*, 292 S.W.3d at 677.

## CONCLUSION

Having overruled Issues One and Two, the decision of the trial court is affirmed.

August 21, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

10