**AFFIRMED and Opinion Filed February 16, 2023**



**In the**

**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00491-CR**

**THEODORE JAMES MEASON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 072307**

# MEMORANDUM OPINION

Before Justices Molberg, Partida-Kipness, and Carlyle
Opinion by Justice Carlyle

A jury convicted Theodore James Meason of continuous sexual abuse of a child younger than fourteen and assessed punishment at life imprisonment. The trial court entered a judgment consistent with the jury's verdict, and Mr. Meason appeals. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

The state indicted Mr. Meason on eight counts, including one count of continuous sexual abuse of a child younger than fourteen, three counts of aggravated sexual assault of a child younger than fourteen, and four counts of indecency with a child by sexual contact. The charges all stemmed from allegations that Mr. Meason

sexually abused his grandson, GM, and step-grandson, BT[1], multiple times over a period of years extending from March 2008 to July 2015.

GM was twenty years old at the time of the May 2021 trial. He lived in Mr. Meason's home from 2008 to 2010 or 2011, after which he moved to Oklahoma but stayed occasionally at Mr. Meason's home on weekends. GM testified that Mr. Meason sexually abused him as a child, with the first time occurring when he was eight or nine years old. He said he was in Mr. Meason's room watching television, and Mr. Meason came in and locked the door. Mr. Meason pulled the boy's pants down around his ankles and began stroking the boy's penis. Afterwards, Mr. Meason told the boy not to tell anyone. When asked how many times Mr. Meason abused him in this fashion, GM testified he "couldn't even keep count," but estimated it was more than forty times.

GM described how the abuse escalated over the years to include Mr. Meason: (1) penetrating the boy's anus with his penis; (2) performing oral sex on the boy; (3) forcing the boy to perform oral sex on him; and (4) forcing the boy to manually masturbate him. GM graphically described the anal penetration, providing sensory details and noting that it was "the worst pain [he's] ever felt."

GM said he waited years before telling anyone about the abuse because he did not want people to think of him as the kid that "got raped by" a family member, and

---

[1] These initials are abbreviations of acronyms assigned to the boys for trial purposes.

he "didn't know how to come forward." He said he eventually told authorities because his cousin, BT, came forward with his own allegations of abuse against Mr. Meason, and he wanted justice for BT.

BT was fifteen years old at the time of the trial. He testified that he sometimes slept in Mr. Meason's bed as a small child and that Mr. Meason would assault him there. The first time occurred when he was seven years old. He woke up to find his pants pulled down, and Mr. Meason was stroking his penis. After the second time it happened, Mr. Meason told him: "If you tell somebody, I'm going to do something bad to you." BT said Mr. Meason had a temper, and this warning scared him. He said Mr. Meason abused him like this on more than ten occasions, with the last occurring when he was nine years old—after which he stopped sleeping in Mr. Meason's bed. BT waited until he was fourteen years old to reveal the abuse.

Following the boys' testimony, the State introduced extraneous evidence of Mr. Meason sexually abusing his daughter, who was thirty-nine years old at the time of the trial. She testified that Mr. Meason abused her hundreds of times when she was a child, beginning when she was six or seven years old, and stopping when she was fourteen, after she reported it to her mother and aunt. She said that the abuse escalated over the years and included rubbing her vulva with his hand, penetrating her vagina with his fingers, performing oral sex on her, fondling her breasts, and forcing her to manually masturbate him. In addition to describing the abuse, she

corroborated certain aspects of the boys' testimony concerning Mr. Meason's home, his temper, and his access to the boys during the relevant time periods.

Officer Jesse Grissom from the Grayson County Sheriff's Office testified about his investigation into the allegations against Mr. Meason. As part of his investigation, he interviewed Mr. Meason at his home. The State introduced into evidence body camera footage of that interview and played it for the jury. In the video, Mr. Meason admitted sexually abusing his daughter when she was a child, although he denied some of her allegations about the specific manner in which she said he abused her. He also noted that family friends had molested him when he was a child, which he said really "warps your mind" and "makes you feel like it's alright to do something to somebody else." Mr. Meason acknowledged that the boys sometimes slept in bed with him, but vehemently denied sexually abusing either of them.

The jury convicted Mr. Meason of continuous sexual abuse of a child under fourteen years of age and thus did not reach the other counts.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ALLOWING MR. MEASON'S DAUGHTER TO TESTIFY ABOUT EXTRANEOUS ACTS OF ABUSE

Mr. Meason first contends the trial court violated his constitutional rights to due process and due course of law by allowing his thirty-nine-year old daughter to testify that he sexually abused her when she was a child. The code of criminal procedure provides that in a trial for a sexual offense against a child, evidence of

extraneous acts of sexual abuse against children may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. art. 38.37, § 2(b). According to Mr. Meason, allowing the State to introduce this evidence deprived him of the right to an impartial jury, infringed on the presumption of innocence, and lowered the State's burden of proof.[2]

We reject Mr. Meason's arguments to the extent he challenges the testimony's admission on grounds that the risk of unfair prejudice substantially outweighed its probative value. *See* TEX. R. EVID. 403. Rule 403's balancing test limits "the admission of evidence under article 38.37." *Dies v. State*, 649 S.W.3d 273, 284 (Tex. App.—Dallas 2022, pet. filed). In reviewing a trial court's exercise of discretion to overrule an objection under rule 403, we will reverse only when the trial court's ruling lies outside the zone of reasonable disagreement. *See Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012).

Mr. Meason suggests the extraneous evidence of his daughter's abuse was unfairly prejudicial both because it occurred more than twenty-five years before the trial began and because the circumstances of his daughter's abuse were not sufficiently similar to the abuse alleged by the boys. We disagree.

---

[2] To the extent Mr. Meason challenges the constitutionality of article 38.37, § 2(b), and assuming it was preserved for review, this argument lacks merit and has been repeatedly rejected. *See Padilla v. State*, No. 05-21-00322-CR, 2023 WL 166209, at *6–7 (Tex. App.—Dallas Jan. 12, 2023, no pet. h.) (mem. op., not designated for publication) (collecting cases).

Evidence of a separate sexual offense against a child "is probative of a defendant's character or propensity to commit sexual assaults on children." *Dies*, 649 S.W.3d at 285. Although the "[r]emoteness of an extraneous offense can significantly lessen its probative value," it is one factor to consider in assessing probative value and does not, by itself, require exclusion under rule 403. *Id.* Mr. Meason correctly points out that his daughter's abuse ended twenty-five years before the trial began, but the gap between the end of his daughter's abuse and the beginning of GM's abuse is closer to twelve or thirteen years. GM was twenty years old at the time of the trial, and he testified that his abuse began when he was eight or nine years old. BT's abuse began five to six years after GM's.

And there are substantial similarities between the abuse Mr. Meason's daughter alleges, to which Mr. Meason largely confessed, and the abuse the boys alleged. Each victim was a member of Mr. Meason's family who testified that the sexual abuse started around a similar age and occurred largely in Mr. Meason's bedroom. All three victims testified that their abuse began with inappropriate touching. And GM testified that, like the abuse alleged by Mr. Meason's daughter, his abuse escalated to oral sex and masturbating Mr. Meason. The daughter's testimony involved allegations that were not markedly different in severity or detail than the boys' testimony; and, the victims' different genders do not negate the probative value the daughter's testimony has in view of the overall similarities. These similarities strengthen the probative value of the daughter's testimony despite

the temporal gap in the abuse. *See id.* at 285–86; *see also Gaytan v. State*, 331 S.W.3d 218, 227 (Tex. App.—Austin 2011, pet. ref'd) (trial court could find that similarities between offenses "significantly bolstered" probative force of "extremely remote" extraneous child abuse—some twenty-four and twenty-eight years prior to the charged abuse).

Also, the State's need for the evidence weighs in favor of its admission. *See Dies*, 649 S.W.3d at 286. The State's case relied largely on jurors finding the boys more credible than Mr. Meason. In such cases, "[r]ule 403 should be used sparingly to exclude relevant, otherwise admissible evidence that might bear on the credibility of either the defendant or the complainant." *Id.* (quoting *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009)).While evidence of previous child sexual abuse is inherently inflammatory, on this record, the trial court did not abuse its discretion by allowing the daughter's testimony under rule 403 and article 38.37, § 2(b). *See id.* at 286.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING MR. MEASON'S MOTION TO SUPPRESS EVIDENCE FROM HIS POLICE INTERVIEW

Before trial, Mr. Meason filed a motion to suppress evidence of the statements he made during his police interview, arguing that he made those statements while in custody and without having been advised of his rights under *Miranda v. Arizona*, 384 U.S. 426, 479 (1966), and article 38.22 of the code of criminal procedure. He claims police engaged in a two-step "confess and release" technique aimed at

circumventing *Miranda* and its progeny, first purporting to speak to him under an innocent guise and then, once he confessed to certain crimes, providing *Miranda* warnings and asking him to repeat the confession. We note that Mr. Meason did not confess to the charged offenses at this trial, but only to some of the abuse his daughter had alleged prior to the interview.

We review a ruling on a motion to suppress for abuse of discretion, using a bifurcated standard of review. *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). We give almost total deference to the trial court's determination of historical facts and "conclusions with respect to mixed questions of law and fact that turn on an evaluation of credibility and demeanor." *Id.* And we review de novo mixed questions of law and fact that do not depend on credibility or demeanor, including whether the historical facts constitute custodial interrogation. *Id.*

A defendant's statement during a custodial interrogation is inadmissible unless, before making the statement, the defendant received the warnings set out in *Miranda* and the code of criminal procedure. *See* TEX. CODE CRIM. PROC. art. 38.22, § 3(a)(2); *Herrera v. State*, 241 S.W.3d 520, 525–26 (Tex. Crim. App. 2007). Here, it is undisputed that the police questioned Mr. Meason without providing him those warnings. Thus, the issue before us is whether Mr. Meason was in "custody" at the time of the questioning.

There are generally four situations that may constitute "custody" for these purposes: (1) the defendant's freedom of action is physically restrained in a

significant way; (2) a law enforcement officer tells the defendant he is not free to leave; (3) a law enforcement officer creates a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted; or (4) a law enforcement officer has probable cause to arrest the defendant and does not tell the defendant he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

All four situations require an objective basis for reasonably believing the defendant's freedom of movement is restricted to "the degree associated with an arrest," rather than a mere investigative detention. *See id.* With respect to the fourth situation, establishing "custody" requires both that the officer manifested his or her knowledge of probable cause to the defendant and that the record demonstrates other circumstances that would lead a reasonable person to believe he is under restraint to the degree associated with an arrest. *Id.*; *see also Saenz*, 411 S.W.3d at 496 ("other circumstances" may include duration or other factors associated with "the exercise of police control over" a suspect).

At a hearing outside the jury's presence, Officer Grissom testified about the circumstances surrounding his interview with Mr. Meason. He said he called Mr. Meason on the phone, told him his name came up during an investigation, and asked if Mr. Meason was available to talk. Mr. Meason invited Officer Grissom to his house, which Officer Grissom visited with his partner the following day.

Officer Grissom's partner wore a body camera that recorded the officers' interactions with Mr. Meason. When the officers arrived at Mr. Meason's home, he invited them inside, and they all sat down in his living room. Officer Grissom, who was armed and in uniform because that was the assigned uniform that day, told Mr. Meason that he and his partner investigated crimes against children, that they received a complaint with his name on it, and that they wanted to get his side of the story.

Central to Mr. Meason's arguments on this issue, Officer Grissom began the interview by saying something to the effect that, unless he admitted to murdering someone and burying them in his back yard, the officers would be leaving when they were finished speaking with him, were not going to take him to jail, and he was not under arrest. Officer Grissom "usually" said this "kind of as an ice-breaker or something". Mr. Meason indicated he understood, and he answered the officers' questions. Approximately half an hour into the interview, Officer Grissom asked if Mr. Meason would mind showing them around his property. Notably, he told Mr. Meason it was okay to "say no" and that he could tell the officers to "go away" whenever he wanted. After walking around the property, the officers spoke with Mr. Meason for a few more minutes before leaving. The entire interaction lasted approximately one hour, and the officers did not arrest Mr. Meason until the following week.

Mr. Meason contends on appeal that he was in "custody" during the interview because a reasonable person would believe his freedom was restrained to the degree associated with a formal arrest, arguing that Officer Grissom necessarily implied that the officers would not leave unless and until Mr. Meason satisfactorily answered their questions. He testified at the suppression hearing to this effect. But his arguments on this issue depend on an unreasonable interpretation of Officer Grissom's statement that the officers intended to leave when they finished speaking with him, no matter what he said, unless he confessed to committing a murder. A reasonable person under the circumstances would understand Officer Grissom's statement to convey merely that the officers did not intend to arrest Mr. Meason that day unless he confessed to killing someone and burying the body.

And if the suppression evidence established that Officer Grissom manifested his knowledge of probable cause by conveying the boys' allegations against him, Mr. Meason does not point to any "other circumstances" in the record that would lead a reasonable person to believe he was under restraint to the degree associated with a formal arrest. *See Dowthitt*, 931 S.W.2d at 255 (the fourth situation); *Saenz*, 411 S.W.3d at 496 ("other circumstances"). The interview took place at Mr. Meason's home at his invitation; it was conversational and non-confrontational; it was not unreasonably long; the officers did not physically restrain Mr. Meason in any way; and the officers did not suggest that Mr. Meason could not terminate the interview at any time. As noted, Officer Grissom at one point told Mr. Meason he

could instruct the officers to "go away" whenever he wanted. *See Moreno v. State*, 586 S.W.3d 472, 500 (Tex. App.—Dallas 2019), *rev'd on other grounds*, 605 S.W.3d 475 (Tex. Crim. App. 2020) (weighing the circumstances in concluding defendant's home interview was non-custodial). And Mr. Meason vehemently denied having sexually assaulted either boy, admitting only to some uncharged conduct against his daughter. Under the totality of the circumstances, the trial court did not abuse its discretion by denying Mr. Meason's motion to suppress.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY FAILING TO CONDUCT A HEARING ON MR. MEASON'S MOTION FOR NEW TRIAL

Mr. Meason contends the trial court abused its discretion by failing to conduct a hearing on his motion for new trial, but nothing in the record establishes that Mr. Meason presented a request for a hearing to the trial court or sought a ruling on such a request. He has not preserved the issue for our review *See Perez v. State*, 429 S.W.3d 639, 644 (Tex. Crim. App. 2014).[3]

---

[3] Had he preserved the issue, we would find no abuse of discretion because the affidavit attached to the motion is conclusory and speculative regarding the effect that any of the physical, mental, and emotional ailments had on the trial. *See Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009) ("[A]ffidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required.").

We affirm the trial court's judgment.

/Cory L. Carlyle/
CORY L. CARLYLE
Do Not Publish                    JUSTICE
T<small>EX</small>. R. A<small>PP</small>. P. 47.2(b)
210491F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THEODORE JAMES MEASON,
Appellant

No. 05-21-00491-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial
District Court, Grayson County,
Texas

Trial Court Cause No. 072307.
Opinion delivered by Justice Carlyle.
Justices Molberg and Partida-Kipness
participating.


Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered February 16, 2023