

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-22-00272-CR

_____

MICHAEL VINCENT DALLY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 84th District Court
Hutchinson County, Texas
Trial Court No. 12644, Honorable Curt W. Brancheau, Presiding

August 2, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Michael Vincent Dally, was convicted by a jury of unlawful possession of a firearm by a felon,[1] double enhanced, and sentenced to confinement for thirty-five years. By three issues, he contends (1) the trial court abused its discretion when it admitted State's Exhibit 12 (body camera footage of a police interview) in violation of his right against self-incrimination; (2) his competency trial was invalid; and (3) his trial

---

[1] TEX. PENAL CODE ANN. § 46.04(a)(1).

counsel was ineffective in not pursuing a motion for a mental health evaluation before a determination of guilt. We affirm.

## BACKGROUND

Late in the evening hours of October 24, 2020, law enforcement responded to a call of shots fired near an apartment complex. The first officer on the scene, Sergeant Stanford, interviewed a few witnesses who implicated Appellant as the shooter. The officer located Appellant at his girlfriend's house and interviewed him. Appellant denied being the shooter and claimed he was popping fireworks.

Sergeant Stanford then responded to another call but later returned to interview Appellant a second time. During this interview, which was admitted at trial as State's Exhibit 12, the sergeant conducted a pat down search for weapons given the nature of the call and asked Appellant to empty his pockets. Appellant eventually admitted he fired the shots and directed the sergeant to where he had buried the gun but claimed he had fired the shots because his home was being burglarized.

Because Appellant had a prior final felony conviction for forgery from 2016, he was charged with possession of a firearm by a felon and convicted. The punishment phase commenced and, after the State presented its evidence, the trial court recessed until the following day. When the proceedings reconvened, defense counsel bench-filed a motion raising the issue of Appellant's incompetency to stand trial pursuant to article 46B.004 of the Texas Code of Criminal Procedure.

Outside the jury's presence, the trial court held an informal inquiry into Appellant's mental state and heard testimony from Appellant and one other witness familiar with

2

Appellant. The court found "some evidence" to justify a competency evaluation. The trial court informed the jury continuation of the punishment phase would be delayed. The mental evaluation was conducted that evening. The next morning the trial court announced Appellant was "deemed incompetent due to substance abuse disorder, methamphetamine, as well as an unspecified psychotic disorder." The doctor's report reflected that an opportunity for Appellant to detox would alleviate his communication issues and he would be deemed competent. The court recessed until Appellant could be re-evaluated.

Appellant was re-evaluated and when proceedings reconvened approximately three weeks later, the trial court found him competent to continue the trial and that he had the ability to consult with defense counsel. The court ruled there was no evidence he was not competent during the first day of trial. The proceedings continued with Appellant presenting his punishment evidence. The jury returned a verdict of thirty-five years' confinement.

## ISSUE ONE—ADMISSIBILITY OF STATE'S EXHIBIT 12

Appellant asserts the trial court violated article 38.23 of the Texas Code of Criminal Procedure by admitting State's Exhibit 12, body camera footage of Sergeant Stanford's second interview with him. We disagree.

At the pretrial hearing a week before trial in which Appellant expressed dissatisfaction with trial counsel's representation, counsel addressed Appellant's admissions and explained, "Judge, there was no arrest. There was no *Miranda* required. That's why there's no Motion to Suppress filed." However, just prior to commencement

of trial, the court held a "last-minute" suppression hearing to determine the admissibility of State's Exhibit 12. Appellant objected under article 38.23 and failure to receive warnings under *Miranda v. Arizona*.[2] He alleged he was the subject of a custodial interrogation when interviewed a second time by Sergeant Stanford and asked to empty his pockets which he asserts resulted in an illegal search.

## APPLICABLE LAW

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion and should be reversed only if it is outside the zone of reasonable disagreement. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (citations omitted). Custody is a mixed question of law and fact that does not turn on credibility and demeanor unless the testimony, if believed, would always decide the custody question. *Id.* (citing *State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013)). We apply a bifurcated standard of review, giving almost total deference to the trial court's factual assessment of the circumstances surrounding the questioning and reviewing de novo the ultimate legal determination of whether the person was in custody under those circumstances. *Saenz*, 411 S.W.3d at 494.

When a trial court denies a motion to suppress and does not enter findings of fact, we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007). The prevailing party is afforded the strongest legitimate view of the evidence and all

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

reasonable inferences which may be drawn from that evidence. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)*.*

*Miranda* and article 38.22 of the Texas Code of Criminal Procedure can render statements produced by custodial interrogation inadmissible without the appropriate warnings. *Wexler*, 625 S.W.3d at 167. A person is in custody if, under the circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). Four general situations may constitute custody: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect he cannot leave; (3) officers create a situation which would lead a reasonable person to believe his freedom of movement has been significantly restricted; or there is probable cause to arrest and officers do not tell the suspect he is free to leave. *Id.* at 255. The first three scenarios must reflect the restriction of freedom of movement amounted to the degree associated with an arrest as opposed to an investigative detention. *Id.* The fourth situation requires the officer's knowledge of probable cause be manifested to the suspect and custody is established only if that manifestation, combined with other circumstances, would lead a reasonable person to believe he is under restraint to a degree associated with an arrest. *Id.* Finally, a defendant has the burden to establish his statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526.

**ANALYSIS**

The second interview lasted approximately twenty minutes. Appellant was questioned on his front porch in the presence of several officers and other individuals.

5

His girlfriend arrived during the interview and sat near him. He initially denied discharging a firearm and told the officers he was popping fireworks. Appellant was aware of the consequences of a felon possessing a gun and at one point speculated he might "get 30 years." At Sergeant Stanford's direction, early in the interview, Appellant emptied his pockets producing what the officers believed was part of a pipe for smoking methamphetamine. The sergeant testified he asked Appellant to empty his pockets as a pat down search for safety reasons given the report of shots fired. He further testified he had probable cause to search because he was looking for a gun.

Appellant was informed he could be taken to jail for possession of the pipe, but the sergeant indicated to him regardless of any statements regarding a gun, he would not be taken to jail that day. Although Sergeant Stanford testified "he wasn't exactly free to leave" while the investigation continued, "he wasn't going to go to jail." During the interview, the officers did not use angry, threatening, or condescending words. They spoke in a calm tone and agreed it was not unreasonable for a person to possess a gun to protect his property. During the interview, officers maintained their distance from Appellant and at no time was he restrained, in custody, or under arrest. After Appellant led the officers to the gun's location, the interview was terminated, and he was free to leave.

Appellant did not satisfy his burden to establish his statement was the product of a custodial interrogation. He was questioned on his front porch and was assured he would not be going to jail. He was not physically restrained nor were his movements restricted in any significant way. He was free to go after questioning. We conclude a reasonable person would not have believed he was in custody or that his freedom of

6

movement was restricted to the degree associated with a formal arrest. The facts do not present a custodial interrogation which would have required *Miranda* warnings to be administered. We cannot say the trial court abused its discretion in admitting State's Exhibit 12 into evidence. Issue one is overruled.

ISSUE TWO—COMPETENCY INQUIRY

Appellant questions the validity of the competency inquiry because the evidence concerned only his current mental state and not his competency when the trial began. We conclude the inquiry was not invalid.

By the *Motion for Mental Health Evaluation* filed during trial, defense counsel asserted Appellant was completely uncooperative, specifically as follows:

- Defendant has failed to return phone calls and text messages;

- Defendant has failed to meet for any meaningful length of time with counsel to prepare for trial;

- Defendant has walked out during the very few and very brief meetings with defense counsel;

- Most of defense counsel's phone calls (which have been few in number) with Defendant have ended due to the remote end of the connection (phone call) being terminated; and

- Defendant has been confused and has even confused "Todd," a different attorney, with Q. Todd Hatter, simply because of having a similar name. Due to that confusion, defense counsel believes denfendant's [sic] confusion has added to the complications of defense counsel's attempts to conference with the Defendant due to what Defendant mistaking [sic] believes he has experienced in the past.

    Defense counsel also included the following:

7

- Defendant has demonstrated what appears to be anxiety, frustration, outbursts of anger, uncontrollable excitement or anger, confusion and lack of understanding of the proceedings and terminology;

- Defendant appears to have a very minimal ability to read and comprehend what he is reading; and

- Defendant frequently appears confused.

Finally, in praying for the trial court to order an evaluation, defense counsel expressed concern Appellant was "possibly unable to effectively participate in his own defense in trial preparation, trial, and mitigation of punishment."

## APPLICABLE LAW—INCOMPETENCY

A criminal defendant who is incompetent may not be put to trial without violating due process. *Turner v. State*, 422 S.W.3d 676, 688–89 (Tex. Crim. App. 2013). The constitutional standard for competency to stand trial is set forth in article 46B.003(a) of the Texas Code of Criminal Procedure. *Id.* at 689. "A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PROC. ANN. art. 46.003(b).

## ANALYSIS

As noted earlier, the trial court recessed proceedings during the punishment phase to hold an inquiry on Appellant's competence. Defense counsel advised the court he observed conduct and demeanor from Appellant during the punishment phase which caused him deep concern in effectively representing Appellant without cooperation. Counsel expressed the possibility Appellant was suffering from a mental illness but was unwilling to say it rose to the level of incompetency.

8

The trial court indicated Appellant "seemed competent and normal" but provided the opportunity for evidence on the motion to be presented. Appellant took the stand and engaged in questioning until he was asked if he knew his mother's whereabouts. He left the stand, broke down in tears, threw down his jacket, and "stomped back into the gallery." Questioning resumed and Appellant expressed thoughts on his mother's murder and believed his counsel was involved with her death.

Another witness who has known Appellant for more than a decade testified Appellant is a heavy drug user and his demeanor and mental state change when he is using. He claimed Appellant's courtroom outburst was out of character. After hearing testimony, the trial court ordered a competency evaluation. The examination revealed Appellant was incompetent. He was, however, deemed competent three weeks later following a period of detox from methamphetamine.

Appellant contends his competency inquiry was invalid for failing to include evidence of his mental state before the guilty verdict. He claims he was unable to understand the charges against him and was unable to engage in reasoned choices of legal strategies and options. He attributes inappropriate courtroom behavior to confusion which he claims began as early as pretrial proceedings.

During pretrial hearings, defense counsel advised the court Appellant was not accepting his advice to consider an offer from the State to resolve all his legal issues because he was unhappy with the offer. The court informed Appellant he could accept the offer or go to trial but could not obtain new counsel merely because he disagreed with counsel's advice.

9

The motion for a mental health evaluation focused primarily on counsel's inability to contact and communicate with Appellant prior to trial and a possible mental illness. "Neither mental illness nor a defendant's obstinate refusal to cooperate with counsel demands a finding that the defendant is incompetent." *Turner*, 422 S.W.3d at 691. The trial court had noted earlier that Appellant was not incompetent on the first day of trial. There was no evidence to rebut the presumption of Appellant's competency prior to the punishment phase. We conclude the competency inquiry was not invalid. Issue two is overruled.

### ISSUE THREE—INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant contends trial counsel was ineffective in failing to move for a mental health evaluation prior to the guilty verdict. We disagree.

#### APPLICABLE LAW—INEFFECTIVE ASSISTANCE OF COUNSEL

To prevail on a claim of ineffective assistance of counsel, the defendant must prove by a preponderance of the evidence counsel's performance was deficient, and a reasonable probability exists that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Allegations of ineffectiveness must be firmly founded and affirmatively demonstrated by the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The record on direct appeal rarely provides a reviewing court an opportunity to conduct a fair evaluation on the merits. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When the record is silent on trial counsel's strategy, we will not conclude a defendant received ineffective assistance unless the challenged

10

conduct is "so outrageous no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

## ANALYSIS

The record shows counsel did not become concerned with Appellant's mental state until the punishment phase. Even the trial court observed Appellant "seemed competent and normal" until his outburst. There is nothing to suggest counsel's decision to move for a mental health evaluation in the middle of the punishment phase was so outrageous no attorney would have done so. An appellate court should not denounce counsel's performance without counsel having had an opportunity to explain his trial strategy. *Goodspeed*, 187 S.W.3d at 392. We cannot say counsel's performance was ineffective. Issue three is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

> Alex Yarbrough
> Justice

Do not publish.

11